FLETCHER *v*. PFEIFER.

Opinion delivered April 29, 1912.

1. LANDLORD AND TENANT—EVICTION.—A landlord will not be enjoined from digging a foundation for a building on a lot adjoining a building leased by him where the evidence clearly establishes that the proposed encroachment will not substantially injure the leased premises or interfere with plaintiffs' quiet enjoyment thereof. (Page 323.)

2. SAME—INJUNCTION AGAINST INJURY.—Unless the resulting injury on account of digging an excavation on an adjoining lot is imminent, substantial and irreparable, the party will be remitted to his action at law, and injunction will not lie. (Page 325.)

Appeal from Pulaski Chancery Court; *John E. Martineau,* Chancellor; reversed.

*W. L. & D. D. Terry,* and *Rose, Hemingway, Cantrell & Loughborough,* for appellants.

1. A lease of a building does not carry the soil under to any depth. 25 Ark. 441; 18 Utah 464; 68 Atl. 950; 35 S. E. 271; 118 Mass. 125. But if it did the landlord would have a right to make any use of the reversion that did not disturb or injure the tenant's use of the leased premises. 36 Ga. 97, 104-5; 31 W. Va. 621; 56 Mo. App. 133; 45 N. J. L. 37; 140 N. C. 422, and many others.

2. There was no breach of the covenant, nor eviction. 2 Devlin on Deeds, 1729; 168 N. Y. Supp. 1073; 31 N. Y. Super. (Sweeny) 25; 2 Tiffany, Land. & Ten., § 184; Rawley on Cov., § 91; 24 Cyc. 1059; 2 Underhill on Land. & Ten. 699.

3. An *actual* eviction, an ouster, is necessary to con- stitute a breach of the covenant. A mere trespass is not an ouster. 90 N. Y. 293; Tiffany on Landlord & Tenant, 1263; 24 Cyc. 1129; 2 Underhill on Landlord & Tenant 1131, 1157, 699; 31 N. Y. 514; 36 Ark. 316; 84 N. Y. Supp. 287; 88 *Id.* 1049; 2 Sandf. 316; 147 Ill. App. 487.

4. No damage nor injury is shown. Irreparable damage or injury must be shown, or injunction will not lie. The proof shows the excavation and underpinning can be done with perfect safety. 2 Underhill on Landlord & Tenant 1188; 1 High on Inj., § 1; 60 N. Y. App. Div. 344; 7 Johns. Ch. 315; 187 N. Y. 243, 252; 148 *Id.* 347; 61 N. Y. Supp. 743; 4 Md. 98; 75 Ark. 286; 78 *Id.* 408; 93 *Id.* 101; 67 *Id.* 413; 33 *Id.* 637; 71 *Id.* 304; 35 *Id.* 184-7; 36 *Id.* 481; 29 *Id.* 340; 30 *Id.* 128; 14 *Id.* 339; 20 *Id.* 610; 62 *Id.* 360; 56 *Id.* 612; 57 *Id.* 387-396.

*J. H. Harrod* and *J. W. Blackwood,* for appellee.

1. The lessors, by their lease, surrendered their right *to use the leased property for any purpose* during the life of the lease. The lessee becomes the absolute owner for the term granted. Taylor on Landlord & Tenant, §§ 15, 108, 178; Wood on Landlord & Tenant, note to § 357 and § 357; 41 Atl. 1001; 75 Mo. App. 237; 33 Cal. 299; 1 Cyc. 784. The lease carries with the building the land on which it stands.

113 Mass. 481; 22 Pick. 401; 128 Mass. 487; 37 Conn. 229; 13 Met. 109; 42 Ala. 356; 175 Ill. 514; 37 Minn. 4; 1 Pingrey, Real Prop., § 489; Tiffany on Landlord & Tenant 269.

2.   The lessors have no right of entry.   Tiedeman on Real Prop., § 176; Taylor on Landlord & Tenant 172; 1 Washburn on Real Prop. 466-7; 6 Cur. Law, 359; 18 A. & E. Enc. Law 225; 55 Ark. 186, 389.

3.   When a landlord by excavation injures the walls of the leased premises the tenant can recover without alleging negligence.   24 L. R. A. (N. S.) 423; 14 Ill. App. 173; 93 N. E. 267.

4.   The breach of the covenant of quiet enjoyment was broken, and injunction will lie even to prevent a threatened injury or eviction.   24 Cyc. 1129; Tiffany, Landlord & Tenant, 1263; Underhill on Landlord & Tenant 1131; 31 N. Y. 514; 36 Ark. 316; 4 N. Y. Sup. Ct. 316; 147 Ill. App. 487.

5.   Injunction is the proper remedy.   24 Cyc. 764; 2 C. P. Div. 572; 81 Mo. App. 1; 14 Phila. 655; 44 Ia. 327; 80 Ky. 391; 44 Am. Rep. 484; 83 Ark. 153; 4 Pom., Eq. Jur., § 1351; 41 Atl. 1001; 71 Ky. 650; 20 Cyc. 1072; 6 L. R. A. 856.   It always lies to prevent an irreparable injury.   High on Inj. 120; 35 Ark. 184-5; 36 *Id.* 481; 29 *Id.* 340; 30 *Id.* 128; 1 Thompson on Negl. 280.

McCulloch, C. J.   Defendants are the owners of a space of ground in the city of Little Rock one hundred feet wide, fronting east on Main Street, and running to Fourth Street on the south.   The whole is covered by brick store buildings.   The building on the south or Fourth Street side contained two storerooms, with a partition wall between, the north wall of which constituted the wall of the next building.   In the year 1902 defendants leased those two stores to the plaintiffs for the term of ten years, with the privilege of renewal for a certain term at the end of the specified period.   The contract (omitting portions immaterial to this controversy) reads as follows:

"The lessors have leased to the lessee the building containing the two stores numbered 324 and 326, on the northwest corner of Main and Fourth streets, in the city of Little Rock, Arkansas, for the term of ten (10) years, commencing on the first day of September, 1902, for which the lessee agrees to pay

three hundred ($300) dollars per month on the first day of each and every month during said term. The lessee shall have the privilege at its own expense to make any changes in the said stores which it may desire, all improvements to be made in a good and substantial manner, and no change shall be made that will weaken said building or impair the value thereof, and at the end of said term all improvements which the lessee shall make on said building shall belong to the lessors. * * * All necessary repairs to the roof of said building shall be made by the lessors when notified by the lessee that such repairs are needed; and if the lessors shall fail to make such repairs within a reasonable time after being notified, the lessee may make the same and charge the cost thereof to the lessors, which charge shall be taken as liquidated damages for such failure to repair roof. In case the said building shall from any cause— not the fault of the lessee—become unfit for occupancy, then the lessors shall within a reasonable time repair the said building or replace the same with a like or other building as in their judgment may seem best, and the rent shall cease until such repairs are made or such building is rebuilt—and in case said building is replaced by one which shall cost more than ten thousand dollars ($10,000), then the lessee shall pay an increased rent at the rate of ten (10) per cent. per annum upon the cost of such building above ten thousand ($10,000) dollars. * * * The lessee shall take good care of said property and keep the surface of the floor and ceiling in good repair, and shall at the end of this lease return the same to the lessors in good condition, the ordinary wear and casualties incident to such property being excepted."

Plaintiffs have continuously occupied the stores, and now occupy same, for the purpose of operating a retail store. Defendants recently made plans for erecting a new building, seven stories high, with basement, on the entire hundred feet of space, which plans contemplated tearing down the buildings on the sixty feet north of the Pfeifer building, and the extension of it south to Fourth Street as soon as the lease to plaintiffs expires. The contract was let for tearing down the old building and constructing the new, and this work progressed to the extent of tearing down the old building and excavating to the depth of about fifteen feet for the founda-

tion and basement. The bank of earth, three feet wide
at the top and sloping downward to about eight feet at the
bottom, next to the wall of the Pfeifer building, was left
undisturbed. The foundation of the wall of the Pfeifer build-
ing extends only a foot or two in the ground; and, as the exca-
vation extends about twelve feet below it, the plans contem-
plate that the wall is to be protected by underpinning,
that is to say, by excavating narrow spaces at intervals
under the wall and building piers until all the space is
filled so as to form a solid wall, thus carrying the wall down
to the depth of the excavation for the new building. Plain-
tiffs objected to the excavation under the wall of the building
which they occupied, and instituted this action against defend-
ants to restrain them from excavating under the wall. They
allege that "going under the said wall is dangerous, and is
likely to cause the said building to fall and to cause plaintiffs
great and irreparable injury by killing and injuring plain-
tiffs, their employees and customers, who resort there for the
purpose of trade."

Defendants answered, denying that the proposed exca-
vation under the wall for the purpose of underpinning will
endanger the building occupied by plaintiffs, or that it will
interfere with plaintiffs' use and enjoyment of said building.

On final hearing, the chancellor decided in favor of plain-
tiffs, and entered a decree in accordance with the prayer of
the complaint.

The evidence is undisputed that the underpinning of
the wall can be made with safety, and that the fears of plain-
tiffs that said work will endanger the building which they
occupy or interfere with their quiet enjoyment thereof are
groundless. Several skilled architects and engineers appeared
as witnesses in the case, and each stated that the underpin-
ning can be safely accomplished, and that that is the proper
and practical method to adopt in dealing with the situation.
The only danger, according to the testimony, is in allowing
the wall to remain in its present condition of insufficient
protection. The evidence also shows that what the architects
term the "cantilever system" can be adopted, whereby the
old wall can be protected and the new building constructed
without going under the old wall, but this is shown to be very

much more expensive than underpinning the old wall and would also sacrifice basement space in the new building.

The state of the case, therefore, is that the defendants propose to go under the wall of the building leased to their tenants, the plaintiffs, for the purpose of protecting it from danger on account of the excavation already made and yet to be made by the new building, also for the purpose of placing the footing for the wall of the new building, and that it can be done with safety and without actual injury to plaintiffs' use of the leased building.

Plaintiffs insist that, as lessees, they have the exclusive possession and right of use and control of the building and the underlying soil for the full period of the lease, that the threatened acts of defendants in excavating under the wall will be an invasion of their rights amounting to an eviction and a breach of the landlord's implied covenant for quiet enjoyment. The chancellor sustained their contention, and granted the relief prayed for. The conclusion which we reach renders it unnecessary to go into the question, so ably argued by counsel on each side, as to the rights of the parties in the use and control of the soil underneath the building. Let it be conceded, for the purpose of this case, that the lessees take for the term of their contract an interest in the soil beneath the building and the exclusive right to occupy and control the same for the purpose of their contract. Learned counsel for plaintiffs base the right to an injunction on the grounds (1) that the proposed encroachment will amount to an eviction which constitutes a breach of the implied covenant for quiet enjoyment of the leased premises, and (2) that it will be a continuous trespass, to prevent which a court of equity should grant relief by injunction.

If, as the evidence clearly establishes, the threatened encroachment will not substantially injure the building nor interfere to any appreciable extent with plaintiffs' quiet enjoyment thereof, then it will not constitute an eviction. Eviction means ouster, not technical but real, from the leased premises, or a substantial part thereof, so as to actually interfere with the enjoyment contemplated by the contract. "An eviction may," says Mr. Tiffany, "be said to occur when the tenant is forced to yield possession to one having a title paramount

to that of the landlord, or when the landlord himself dispossesses the tenant, either by actually taking possession or by such acts of interference with the latter's enjoyment of the premises that the tenant is, in the eye of the law, justified in relinguishing possession, and he does relinquish it." 2 Tiffany on Landlord and Tenant, § 184.

Another textwriter on this subject states the law thus: "Any conduct on the part of the landlord, even though not amounting to an actual physical ousting of the tenant from the possession of the premises, but which effectually deprives the tenant of the use and benefit of all or a portion of the premises, amounts to a constructive eviction. What particular acts or omissions on the part of the landlord shall in law amount to a constructive eviction can not be defined by a general rule which shall be applicable to all circumstances. Whether a constructive eviction exists always depends upon the facts in each particular case. By this is meant the situation of the parties to the lease, the character of the premises, the use to which the tenant intends to put them, and the acts which constitute the conduct of the landlord. Speaking generally, the acts of the landlord in relation to the premises must be such as will absolutely prevent the use of the premises by the tenant or by his subtenants for the particular purpose for which they were leased." 2 Underhill on Landlord and Tenant, § 676.

In *Collins* v. *Karatopsky*, 36 Ark. 316, Mr. Justice EAKIN, speaking for the court, said:

"Eviction depends on the materiality of the deprivation. If trifling and producing no inconvenience, it should not be regarded."

Mr. Underhill, on the subject of injunction on account of a threatened eviction, says:

"As a broad general proposition, it may safely be said that equity will not usually interfere by an injunction or other process to enjoin the landlord from evicting the tenant. An injunction will not be entertained to enforce the right of the tenant to possession under the lease unless he would be otherwise irreparably damaged." 2 Underhill on Landlord and Tenant, § 700.

It follows, therefore, that the threatened acts of defend-

ants did not amount to an eviction, and the injunction can
not be sustained on that ground.

Conceding that the acts of defendants will constitute a
continuous trespass, can plaintiffs as lessees maintain an action
to prevent that? In case of injury to leased premises, a right
of action accrues to the tenant on account of the interruption
of the enjoyment of his estate and the lessening of the value
of the use for the term and to the landlord for the permanent
injury to the freehold. *St. Louis, I. M. & S. Ry. Co.* v. *Hall*,
71 Ark. 302; *George* v. *Fisk*, 32 N. H. 32; *Wood* v. *Griffin*,
46 N. H. 230; *Halsey* v. *Lehigh Valley Rd. Co.*, 45 N. J. Law
37; *Cherry* v. *Canal Co.*, 140 N. C. 422; Tiffany on Landlord
and Tenant, pp. 2102 and 2124.

Since the tenant has a right of action only on account of
injury to his interest in the property, such injury must, accord-
ing to well settled principles of equity, be irreparable before
relief by injunction will be granted. The tenant can not
enjoin merely because the encroachment constitutes a con-
tinuous trespass unless the injury is substantial and irreparable.
In *Davis* v. *Davis*, 93 Ark. 93, Judge BATTLE, speaking for the
court, said:

"Courts of equity do not grant injunctions to restrain
trespassers when the injury is not irreparable and destructive
of plaintiff's estate, or where he has a full and adequate remedy
at law."

Mr. High, in the first section of his work on Injunctions,
lays down the rule broadly that "a court of equity will not
lend its aid by injunction for the enforcement of right or the
prevention of wrong in the abstract, and unconnected with
any injury or damage to the person seeking the relief." The
same learned author says in another place (§ 9) that "sub-
stantial and positive injury must always be made to appear
to the satisfaction of a court of equity before it will grant an
injunction, and acts which, though irregular and unauthorized,
can have no injurious results, constitute no ground for the
relief." This rule has been applied in case of threatened
injury on account of excavations on adjoining lots, and the
courts hold that, unless the resulting danger is imminent and
injury probable, the party will be remitted to his action at law
to recover for any damages which may result, and that an

injunction will not be granted to stop the excavation. *Morrison* v. *Latimer*, 51 Ga. 519; *McMaugh* v. *Burke*, 12 R. I. 499.

As before stated, the proof in this case shows that no injury will result from underpinning the wall, that there is no substantial danger attending the work, and that the fears of plaintiffs are groundless. This being true, we are of the opinion that they have shown no ground for equitable relief. The decree is therefore reversed, and the complaint dismissed.

Hart and Frauenthal, JJ., dissent.