WEEKS *v.* McCLANAHAN.

5-1193                            300 S. W. 2d 6

Opinion delivered March 11, 1957.

[Rehearing denied April 15, 1957.]

*Rieves & Smith* and *Giles Dearing,* for appellant.

*Hale & Fogleman,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is an action by a tenant against his subtenant and landlord to recover damages in the form of double rent for the alleged willful and wrongful holding over of the rented lands after the term. For clarity the parties will be referred to as they were designated in the trial court.

The action was filed by plaintiff, P. McClanahan, against the defendants, Alton Weeks and J. O. Anderson. The issues presented by the pleadings were summarized by the trial judge in a preliminary instruction to the jury, as follows: "Gentlemen of the jury, in this case P. McClanahan sues the defendants Alton Weeks and J. O. Anderson, alleging that (they) conspired and colluded together in wrongfully holding over 412 acres of land which this plaintiff says that he had rented from the defendant, J. O. Anderson, for the year 1952, and to which the plaintiff says he was entitled to the possession of for the year 1952. The plaintiff further alleges that the defendant, J. O. Anderson, wrongfully prevented him from taking charge of the proceeds of the crop produced by the defendant Weeks and wrongfully converted said crops to his own use and to that of the defendant, Weeks, thereby depriving him of his right to enforce his landlord's lien and of the fair rental value of said property.

"The plaintiff McClanahan admits that he was indebted to the defendant Alton Weeks in the sum of $1,164.-75, and he admits that he was indebted to the defendant J. O. Anderson in the sum of $751.00.

"The defendant Alton Weeks denies that he wrongfully held over the 412 acres for the year 1952, and further denies that he conspired or colluded with the defendant J. O. Anderson to hold over said 412 acres for the year 1952, and further denies that he conspired with J. O. Anderson to defeat the plaintiff, McClanahan, in the enforcement of any of his rights and claims. He says that he had an agreement with the plaintiff McClanahan whereby he rented said lands for the year 1952 for the sum of $12.00 per acre. By way of cross-complaint against the plaintiff, McClanahan, he alleged that the plaintiff McClanahan is indebted to him in the sum of $1,376.75.

"Alton Weeks by way of cross-complaint against J. O. Anderson alleges that Anderson wrongfully refused to permit him to sell said cotton upon his request and that by reason of a later decline in the market value of the cotton, he was damaged thereby.

"The defendant and cross-defendant Anderson on the other hand denies that he colluded with the defendant Weeks or that the plaintiff McClanahan was damaged by reason of any conspiracy or collusion on his part and that of Weeks, and says that he should recover on his cross-complaint against the plaintiff McClanahan the balance due on his rent which he alleges is $751.00, together with interest at the rate of 6% per annum, which after the allowance of credits against the principal, amounts as of May 10, 1953, to a total of $936.60, for which he asks judgment against the plaintiff McClanahan. He also denies that he is indebted to the cross-complainant Weeks in any amount and alleges that they have had a settlement of their account."

By agreement of counsel the issues were presented to the jury at the conclusion of a lengthy trial upon ten special interrogatories in answer to which that body found that for the year 1952 Weeks wrongfully and willfully held over the lands in question which had a fair rental value of $18.00 per acre and that Anderson conspired and colluded with Weeks in such holding over; that Anderson converted the proceeds of the crop of Weeks to the latter's damage in the sum of $1,148.97; that plaintiff owed Weeks $1,248.75 and Anderson $751.00; and that there was an agreement by Anderson with Weeks to return a portion of the rent paid by Weeks. In conformity with these findings the Court entered judgment finding that plaintiff should recover from both defendants the sum of $11,051.00 which represented double the fair rental value of the land for 1952 less a credit already paid by Weeks; that Anderson recover from plaintiff the sum of $751.00 with interest to the date of a tender of the payment of the rent note by plaintiff to Anderson; that Weeks recover from plaintiff $1,248.75; and that Weeks

recover from Anderson $1,148.97 for conversion of part of the cotton grown on the lands.

According to the proof presented by plaintiff, the 412 acres in question is part of a larger tract of 1236 acres which plaintiff leased from Anderson for the years 1950, 1951 and 1952 at $11.00 per acre. Weeks had rented the 412 acres from Anderson in 1949 and was in possession when plaintiff took over under his lease in 1950. At Anderson's insistence plaintiff sublet the land to Weeks at $12.00 per acre during 1950 and 1951 with Weeks executing notes to plaintiff for said rents. On or about November 1, 1951, plaintiff advised Weeks that he could sublet the land to others for $20.00 per acre and that he would not renew the rent contract for 1952 on the basis of $12.00 per acre. Upon Weeks' refusal to agree to pay the increased rental plaintiff served a written notice upon him to quit the premises on or before December 31, 1951. About this time Weeks rented another large tract from another party for the year 1952.

Anderson was anxious for Weeks to stay on his land for several reasons and acted as his advisor and secretary in negotiations with plaintiff. Anderson was furnishing Weeks in his operations on these and other lands and held a mortgage on all his equipment. Under his lease with plaintiff Anderson had no control over ginning of the cotton but Weeks was required to gin all cotton at a cooperative gin in which Anderson was the principal stockholder and received a ''kick-back'' or rebate of $6.00 per bale. In November, 1951, Anderson tried to purchase plaintiff's contract on the land held by Weeks for $1,200.00 but the offer was refused. Weeks stayed on and farmed the land without a contract with plaintiff until October, 1952, when Anderson wrote plaintiff that Weeks would not gather the crop unless some agreement could be made about the rentals.

On November 5, 1952, Anderson prepared and had Weeks sign a check payable to plaintiff and Anderson ''in full settlement of rent and account'' on a rental basis of $12.00 per acre for 1952. Anderson was to furnish funds

to pay the check which plaintiff returned and Anderson testified that plaintiff would have been a "gump" to have accepted it. Plaintiff also tendered to Anderson the full amount of rents due him on the Weeks land under their lease agreement provided Anderson would turn over the unharvested crop and warehouse receipts for cotton already harvested, but the tender was refused. Proof of the foregoing, and other circumstances tending to show the defendants conspired and colluded in the holding over of the lands by Weeks, were disputed in part by the defendants. Weeks testified, and plaintiff denied, they orally agreed in September, 1951, that Weeks could rent the land for 1952 at $12.00 per acre.

On the cross-complaint of Weeks against Anderson for damages growing out of the alleged conversion of some of the cotton, Weeks offered evidence to the effect that in the late Fall of 1952 he made urgent requests of Anderson to permit him to sell about 60 bales of the harvested cotton as Weeks had done in previous years. Anderson refused and insisted on holding the cotton until the latter part of February, 1953, when he forced Weeks to sell at a price of approximately 33 cents per pound as compared to the price of 39 cents per pound which the same kind and staple of cotton was bringing at the time the requests were made. The testimony of Weeks as to the price differential was corroborated by experienced farmers and cotton buyers, one of whom purchased the cotton in question. Anderson retained proceeds of the sale in the net amount of $13,-521.27 with the exception of about $330.00 which he turned over to Weeks.

For reversal of plaintiff's judgment against him the defendant J. O. Anderson, argues there is no substantial evidence to support the jury's finding that he conspired or colluded with Weeks in wrongfully holding over the land for the year 1952. When considered in the light most favorable to plaintiff, we hold the evidence substantial and sufficient to sustain the conclusion that Weeks wrongfully and willfully held over the land and that Anderson conspired and colluded with him in doing so. Nor do we agree with Anderson's further contention that the evi-

dence is insufficient to sustain the jury's finding that he converted Weeks' cotton. While the evidence is in dispute on this issue the jury was justified in concluding that Anderson refused to permit a sale of the cotton at the usual time of settlement as requested by Weeks and forced a sale several months later at a loss and to the damage of Weeks.

The statute (Ark. Stats., Sec. 50-509) under which plaintiff sought double damages against both defendants reads: "If any tenant for life or years, or if any other person who may have come into possession of any lands and tenements under or by collusion with such tenant, shall willfully hold over the same, after the termination of such term and thirty (30) days' previous notice in writing given, requiring the possession thereof, by the person entitled thereto, such person so holding over, shall pay to the person so kept out of possession double the yearly rent of the lands or tenements so detained, for all the time he shall keep the person entitled thereto out of possession."

The serious question is whether, under the proof, Anderson may be held liable for damages in the amount of double the yearly rental under the statute. Since the suit was brought on the theory that Anderson colluded in aiding Weeks to retain possession, and not to obtain possession for himself, there may be some merit in the contention that Anderson is not a "person who may have come into possession of any lands or tenements under or by collusion with such tenant," as that term is used in the statute. Aside from this argument, however, we agree with Anderson's further contention that the statute has no application to anyone unless he has been given the 30 days' written notice required therein. Although such notice was given to Weeks none was served on Anderson. It is true that the jury could have found that Anderson knew of the notice served on Weeks and colluded with him in ignoring it, but we do not agree that this constituted notice to Anderson as required in the statute. We have held that the statute, being highly penal, must be strictly construed and cannot be extended by intendment beyond

its express terms. See *Lesser-Goldman Cotton Co.* v. *Fletcher,* 153 Ark. 17, 239 S. W. 742, where the court held the statute applicable only where the holding over after the term is willful and the 30 days' written notice requiring possession is given.

Anderson also contends the court erred in refusing to give, without modification, his Requested Instruction No. 4, the first paragraph of which reads: ''The jury are instructed that a landlord has a lien upon all crops grown on the demised premises in any year for the rent, without regard to whether the crop is raised by the tenant or not and without regard to any agreement between the tenant and sub-tenant. This lien accrues as soon as there is any crop. You are further instructed that Anderson, the landlord, could lawfully collect from each sub-tenant the sub-tenant's portion of the total rent owed by McClanahan and that McClanahan was without right to collect from any sub-tenant the rent or any portion thereof owing by such sub-tenant to McClanahan unless McClanahan had paid his rent in full to Anderson, *which he has not done in this case.*'' The court gave the instruction as modified by deleting the words in italics and substituting therefor, ''or had tendered payment in full of such rent to Anderson.'' In view of the evidence to the effect that plaintiff made a tender of payment in full of the rents due Anderson, which the latter refused, the instruction as requested was misleading and would have amounted to a comment on the evidence by the court. The modification simply cured this defect.

Anderson also argues the court erred in allowing him interest on plaintiff's rent note only *from* the date of the alleged tender of the rents by plaintiff. We think counsel means to contend that the court erroneously allowed interest only *to* the date of tender because that is what the court did. The evidence is practically undisputed that plaintiff made a full tender of all the rents due Anderson. While Anderson contends plaintiff's request that the warehouse receipts be turned over to him at the time of the tender amounted to an ''unreasonable condition'' which rendered it ineffective to stop the running of inter-

502

est, there is a paucity of proof to support this conclusion. It is well settled that a creditor cannot refuse to accept payment in full and demand interest in the future. *Miller v. Miller,* 193 Ark. 362, 100 S. W. 2d 74.

Defendant Weeks argues the court erred in failing to allow him interest on the account due him by plaintiff, but no objection was made below on this ground and it cannot be urged for the first time on appeal.

It follows that the court erred in assessing double damages in favor of plaintiff against the defendant, J. O. Anderson. But this error may be cured by modification. The cause will therefore be remanded to circuit court with directions to reduce said judgment in this respect to single damages only. In all other respects the judgment is affirmed.