## M. L. SIGMON FOREST PRODUCTS, INC. *v.* HAROLD E. SCROGGINS, SR.

5-5527                                    465 S. W. 2d 673

Opinion delivered April 12, 1971
[Rehearing denied May 10, 1971.]

*Catlett & Henderson,* for appellant.

*Clifton Bond,* for appellee and cross-appellant.

CARLETON HARRIS, Chief Justice. This is the second appeal of this case. In *M. L. Sigmon Forest Products, Inc.* v. *Harold E. Scroggins, Sr.,* 247 Ark. 493, 446 S. W. 2d 198, this court reversed the decree of the Drew County

Chancery Court and remanded this cause for further proof on two points, first, a determination of how long the appellant had been, and would be, kept from possession of the premises sought in the action and secondly to permit appellee to offer competent evidence of his reasons for withholding possession of the lands in controversy from appellant. The parties had entered into a lease agreement on January 18, 1967, which *inter alia,* provided:

"Lessor hereby leases and lets to Lessee for a term of two (2) years commencing on the 18th day of January, 1967, the following described lands lying and situated in Drew County, Arkansas, to wit: [description of lands follows]"

On December 13, 1968, appellant notified Scroggins that it would expect to take full possession of the farm on the expiration date. Whereupon Scroggins filed suit in the Chancery Court of Drew County alleging that he was a tenant for years under the lease agreement and was entitled to six months' written notice of termination, with such notice to end with the rental period of 1971. He further asserted that he had done substantial work in preparing the lands for the 1969 crop year, and that he had more than six months prior to the termination date in the lease, attempted to ascertain from appellant whether the lease would be continued or terminated, but without success. It was asserted that the annual rental value of the farm was $30,000 and that appellant should be enjoined from taking possession or from interfering with appellee's possession. Sigmon agreed that the rental value for one year's rental was $30,000. The chancellor decided the issues on the basis of a motion for summary judgment, responses, affidavits, and exhibits to the affidavits; but we reversed, remanded the case stating:

"There is, however, one fact definitely left for determination. Section 50-509 provides that one who willfully holds over, thus preventing possession to the person entitled thereto, shall pay the person so kept out of

possession double the yearly rent of the lands detained *for all the time he shall keep the person entitled thereto out of possession.* This record does not reflect for how long the appellant has been, or will be, kept from possession, and this fact will have to be determined at another hearing. Also, while there is nothing in the record before us which reflects that appellee acted in good faith in not surrendering the premises, inasmuch as the case is being remanded anyway, we think it proper to permit Scroggins to offer competent evidence of his reasons for withholding possession. In *Lessor-Goldman Cotton Company* v. *Fletcher,* 153 Ark. 17, 239 S. W. 742, this court pointed out that, under the statute:

> '* * * to entitle the landlord or lessor to double rents after the termination of the lease term, the holding over by the tenant must be done wilfully. The statute is highly penal, must be strictly construed, and cannot be extended by intendment beyond its express terms. A holding over by the tenant under the *bona fide* belief that he has the right to do so, even though he were mistaken, is not a wilful or contumacious holding under the statute, where the undisputed facts show, as they do here, that there were reasonable grounds for such belief.' "

On remand, the court conducted a hearing as a matter of determining these two matters, and at the conclusion of the hearing, made the following findings:

"1.   Scroggins retained possession of the land in issue to November 17, 1969.

2.   The 'yearly rent' of the land in issue for 1969 is $30,000.00.

3.   Scroggins 'acted in good faith (under the facts and circumstances in this action)' in not surrendering the possession of the land in issue to Sigmon and is not subject to the penalty of double rents as authorized by Section 50-509 supra.

4. Sigmon should have a judgment against Scroggins for $30,000.00, less $26,249.44 previously paid, or a sum of $3,750.56, with interest and all costs of this action for which execution or garnishment may issue.

The rice and bean crop was stored and sold to certain graineries and certain amounts· are paid by said graineries to Sigmon and Scroggins at intervals. This to state the full purchase price of the crops had not been paid by the graineries to Sigmon and Scroggins on the date this action was heard. Sigmon should file or cause to be filed with the Clerk of this Court a statement of further advances made by the graineries to it since this trial of this action, and if such advances have been received by Sigmon the same should be credited to the judgment granted in Part 4 hereof."

From the judgment so entered, appellant brings this appeal, contending that the court erred in holding that Scroggins acted in good faith in not surrendering the lands leased and was therefore not subject to double rental under the provisions under Ark. Stat. Ann. § 50-509 (1947). Appellee cross-appeals, contending that the trial court erred in not granting Scroggins judgment against appellant for one-half of the cost of seed, fertilizer, and herbicides used in the growing of the 1969 rice crop and one-fourth of the cost of fertilizer and herbicides used in growing the 1969 soybean crop in the sum of $7,227.01. We first discuss the direct appeal.

In *Lesser-Goldman Cotton Company* v. *Fletcher supra,* we held, as pointed out on the first appeal of this case, that the landlord or lessor is only entitled to double rents when the holding over by the tenant is wilfully done, and in the case before us, the trial court found that the holding over was not "wilful". In giving his reasons, the chancellor said that the relationship between the parties appeared to have been satisfactory for more than 25 years,[1] and "because of this long tenure, development and improvement of the farm by Scroggins there had been created a feeling of possession and maybe some degree of proprietary claim by Scroggins in the

[1]Appellee's father had farmed the lands previous to any lease to Scroggins.

land"; further, that Sigmon had knowledge of the work being done by Scroggins in preparing the land for the crop year but did not warn appellee that the lands would not be rented to him in 1969. Further from the chancellor's opinion:

"Scroggins testified that it would have been inconvenient for him to remove from the lands, that he would have suffered the loss of the preparatory work done on the land for the 1969 crop (neither of which are legal causes to withhold possession of the land), that he knew the lease in issue had a termination date but that he was entitled to remain in possession until he had received a six months notice of the termination of the lease or to quit possession."

Saying that he really thought he had the legal right to retain possession of the premises unless he had received a six months' notice to vacate does not establish the *bona fide* belief referred to by the law. Such *bona fide* belief might well arise where several heirs were contending to be owners of land—or where there was a will contest to determine whether one party had been legally devised some realty—or where there was a boundary line dispute. But, of course, there are no circumstances of this nature presented in the instant litigation.

We do not agree that the reasons enumerated justified Scroggins in holding over, and we have reached the conclusion that the holding over by appellee, under the law, was entirely "wilful". Scroggins testified that he talked with Glenn Cooper, president of appellant company, in June or July of 1968, with reference to whether he would be allowed to farm the lands past January 17, 1969. While it is asserted in appellee's brief that Scroggins was told by Cooper "that he thought it would be all right for Scroggins to farm the lands for another year", the record lacks quite a bit of supporting this interpretation. The first time that Scroggins was interrogated, and by his own attorney, relative to what was discussed in regard to the leased lands, Scroggins replied: "Not much of anything, I just asked him if he was going to let me farm on and *he said that he would let me know. That was all that was ever said* [emphasis

supplied]'' When he was next asked by his attorney what he had been told, appellee stated: "He said that he would let me know—at that time he said that it was all right." This was the first mention of any inference that it "would be all right". Following this answer, the court asked "what was that? Did he say that, or, did he think that?" Appellee's attorney then asked "What did Mr. Cooper say?" Scroggins replied as at the outset "He didn't say anything, really. He said that he would let me know." Subsequently, appellee stated that he assumed that he would have the lands for another year "when he told me that everything was O.K.". It somewhat appears that the alleged statement by Cooper "at that time he said it was alright" was an afterthought.

It is also argued that Scroggins began preparing the lands for another crop year in October of 1968 and that Sigmon had knowledge of this fact but did not warn Scroggins not to incur the expense necessary in such preparation. It is likely that Sigmon did know of the preparation, but there is no proof that this was true. Though Cooper testified in the case, he was never questioned along this line and the testimony of Scroggins certainly did not establish this knowledge on the part of appellant. When asked if Sigmon Farms knew if he was preparing the lands for the next crop year, Scroggins said "I assume that they did. They were around all the time—some of them". It developed that by "they" he meant a Mr. Hobbs, whom Scroggins identified as follows. "I guess that he is right-hand man for Cooper, I don't know." When asked if Hobbs saw him preparing the land, he said that he guessed that he did. Be that as it may, there was no legal obligation on the part of appellant to tell Scroggins anything at all concerning renewal of the lease until 30 days before the expiration date. Scroggins testified that he had been renting the land since 1955, some years without a written lease; that he first had a ten year lease, but then entered into the two year lease in January, 1967. This fact, in itself, should have served as a notice to appellee that he could not depend upon prior practices, and of course, the testimony, earlier quoted, that Cooper would let him know about the lease of the land for 1969 like-

wise should have served as a warning not to incur expense until definite arrangements had been made. The evidence also reflects that Scroggins locked the gates to keep appellant off the farm.

His determination to maintain possession is further shown by the fact that he ignored the finding of the chancery court which was filed on February 18, 1969. The chancellor had held that a three day notice must be served on Scroggins (in compliance with Ark. Stat. Ann. § 34-1503 [Repl. 1962]) before appellant would be entitled to the land, and this notice was served on March 5, notifying Scroggins to give up the premises. Scroggins refused to do so and the next day appellant commenced an action in unlawful detainer in circuit court praying for possession of the land in issue and seeking double the annual rental value of the lands for the time Sigmon was kept out of possession; also for any sums for which Sigmon might be held liable for the reason of its breach of its rental contract with James E. Henly to whom Sigmon had leased the lands for a period of three years to commence on January 18, 1969. A writ of possession was issued by the clerk but Scroggins filed a bond to retain possession, and continued to hold on until November. The Supreme Court opinion was issued on November 4, 1969, and Scroggins delivered possession of the land on Noevember 17, 1969. The circuit court action was thereupon dismissed on December 4, 1969. In other words, appellant was prevented from using its lands for the entire crop year of 1969.

Though not argued by appellee, nor mentioned by the trial court, top, side, or bottom, in either the first case to reach this court, or on the present appeal resulting from the remand, it has been suggested by a member of this court that the case should be affirmed for the reason that equity will not lend its aid to the enforcement of penalties. See *Cooley & Cooley v. Lovewell*, 95 Ark. 567, 130 S. W. 574; *Hendrix v. Black*, 132 Ark. 473, 201 S. W. 283. We do not agree with this view. Brushing aside the fact that this defense is not argued by appellee, nor relied upon by the court in reaching its determination, there are more cogent reasons why such

a defense is not applicable. In the first place, this was not an action instituted by appellant in the chancery court wherein it sought double damages; to the contrary, *chancery jurisdiction was invoked by appellee,* and as stated in our first opinion, in answering, it was necessary under the provisions of Ark. Stat. Ann. § 27-1121 (Repl. 1962), that appellant file any counterclaim that it might have, or be thereafter barred.[2] In *Augusta Cooperage Co.* v. *Bloch,* 153 Ark. 133, 239 S. W. 760, Bloch instituted an action against the company in the circuit court to recover damages, including treble damages, for the wrongful cutting and removing of timber. The appellant moved to transfer the case to chancery court, asserting that the deed under which it claimed should be reformed. The case was transferred, the court deciding the litigation in favor of Bloch, however denying treble damages. The company appealed from an adverse ruling on reformation of the deed. On the question of treble damages, this court said:

"The trial court found that the trespass was wilful, but refused to award treble damages, citing *Cooley* v. *Lovell,* 95 Ark. 567; *Hendricks* v. *Black,* 132 Ark. 473. These were cases originating in courts of chancery to enforce penalties, and we held that 'courts of equity will not aid in the enforcement of penalties.' But, where one goes into a court of law to recover treble damages awarded by the statute (§ 10320, C. & M.) and the defendant in the action asks and succeeds in having the cause transferred to equity, the chancery court, having acquired jurisdiction and having determined on trial of the issues that the plaintiff is entitled to treble damages under the statute, may follow the law and award such damages without sending the cause back to the law court.[3]"

---

[2]The only complaint instituted by appellant was filed in the Drew County Circuit Court, but was dismissed after appellee surrendered the premises.

[3]The case was affirmed, the court finding that there actually had not been a wilful trespass, stating:

Even though the trial court gave erroneous reasons for its findings and decree, nevertheless, we find that the amount of the decree based on the stumpage value of the timber was justified by a preponderance of the evidence in the record."

In *United States* v. *Flint Lumber Co.,* 87 Ark. 80, 112 S. W. 217 (1908), suit was instituted in the Yell Chancery Court against the Flint Lumber Company to wind up the company's affairs on account of its insolvency, and a receiver was appointed. Thereafter, appellant was allowed to intervene, the intervention alleging that the property in question was vacant land of the United States and subject to homestead entry at the land office of the United States at Dardanelle; that one George Gamey, at the instance of appellee, and with the intent of defrauding the United States out of the pine timber growing on the lands, violated the laws regulating homestead entries and cut and removed 350,000 feet of pine logs. The court rendered a decree in favor of intervener but awarded only the measure of damages provided for cutting of timber by inadvertence or mistake (the value of the timber when first taken or "logs in the tree" value), rather than making an award under the provisions of the law relating to a wilful trespass (trespasser being liable for the full value of the property without deduction of labor or expense). The intervener appealed on this one point only and in reversing the trial court, this court, in an opinion by Mr. Justice Hart, stated:

"The amount of the liability in this case depends upon the fact of whether or not George Gamey and the Flint Lumber Company were wilful trespassers acting in bad faith and for that reason ought to suffer some punishment for their depredation."

The court held that the evidence showed appellee to be a trespasser, that the penalty should have been invoked, and reversed the chancellor.

It thus appears that there is a difference in the rule relating to the award of damages for wilful trespass (in chancery court) where the owner of the land instigates the action, and where the tenant or trespasser institutes the action. In *Augusta Cooperage Co.* v. *Bloch supra,* the case was transferred to the chancery court on the application of the alleged trespasser, and we said the

penalty was entirely proper. Of course, in *United States v. Flint Lumber Co. supra,* the benefit of the penalty was given to the intervener, who had not orginally filed the suit, but who had a definite interest in the outcome of the litigation.

We can see no legal difference where a person against whom a penalty is sought moves to transfer the case to equity (as in *Bloch)* and where a prospective defendant files the suit originally in chancery.

There is yet another reason why such a defense would have no merit in the present instance. Paragraph four of this opinion, quoting from the opinion in the first appeal of this case, makes it clear that the case was remanded for the purpose of determining how long appellant was kept out of possession of the premises, and whether Scroggins acted in good faith, in order *to determine whether appellant was entitled to double damages, and in what amount.* That opinion became the law of the case and is now controlling on this appeal. In *Farmers Cooperative Assn.* v. *Phillips,* 243 Ark. 809, 422 S. W. 2d 418 (1968), we said:

"There are two answers to this contention. First, our prior opinion became the law of the case and is controlling upon this appeal even though we should now think it to have been erroneous (which we do not imply)."

Numerous cases could be cited to the same effect.

On cross-appeal, it is urged that the court erred in not allowing Scroggins judgment against Sigmon for one-half of the cost of seed, fertilizer and herbicides used in the growing of the 1969 rice crop and one-fourth of the cost of fertilizer and herbicides used in growing the 1969 soybean crop, the amount sought being $7,-227.01. Actually, even if we agreed with appellee, it appears that the amount would be incorrect since appellee's accountant, H. W. Wall, admitted that in reaching this figure, he had charged Sigmon with one-half of the expense of the bean crop, where he should have charged

only one-fourth. Also, it appears that certain items were included in this sum which were not the responsibility of Sigmon under the terms of the lease. Be that as it may, appellee is not entitled to reimbursement, *for his 1969 operation was not under the lease but rather came about as a matter of his holding over.* The lease was not in effect because it had expired on January 18, 1969. The sharing of the cost of making the crop, as heretofore set out, was based on a provision in the lease. Since the lease was not applicable to the 1969 crop, its provisions cannot be relied upon.

To summarize, we find that the holding over was wilful, and appellant was entitled to double damages for the time that Scroggins held over and kept possession from appellant. This simply means that Sigmon is entitled to rent for 1969 in the amount of $30,000 (for which judgment was given by the trial court), plus a penalty of $25,000, this last figure being reached on the basis of the fact that Sigmon was denied possession for a period of ten months. This makes a total due from Scroggins to Sigmon of $55,000, less amounts already paid.

The decree on direct appeal is reversed and the cause remanded with directions to the chancellor to enter an additional judgment for M. L. Sigmon Forest Products, Inc. against Harold E. Scroggins, Sr. for the sum of $25,000 representing double damages; on cross-appeal the decree is affirmed.

It is so ordered.

FOGLEMAN, J., dissents.

JOHN A. FOGLEMAN, Justice, dissenting. I have suggested, and insist, that the chancellor's decree should be affirmed because equity does not lend its aid to the enforcement of penalties. There can be no doubt that the "double damage" statute invoked provides for a penalty. *Lesser-Goldman Cotton Co.* v. *Fletcher,* 153 Ark. 17, 239 S. W. 742; *Weeks* v. *McClanahan,* 227 Ark. 495, 300 S. W. 2d 6.

Even though this case is basically an action at law without any elements of equity jurisdiction and probably should have been tried in the circuit court, this court determines an appeal, as if the case were in chancery, when the parties have so treated it. *Ware* v. *White,* 81 Ark. 220, 108 S. W. 831. See also *Gray* v. *Malone,* 142 Ark. 609, 219 S. W. 742. The parties here treated the case as if it were in equity. No effort was made to transfer it to law. Trial here in an equity case is de novo, on which a decree will be affirmed if it appears to be correct upon the record as a whole, even though the chancellor may have given the wrong reason for his conclusion. *Morgan* v. *Downs,* 245 Ark. 328, 432 S. W. 2d 454. See also *Reamey* v. *Watt,* 240 Ark. 893, 403 S. W. 2d 102; *Downtowner* v. *Commonwealth Sec.,* 243 Ark. 122, 419 S. W. 2d 126; *Langley* v. *Reames,* 210 Ark. 624, 197 S. W. 2d 291. This is consistent with the general rule that the appellate court looks to the correctness of the judgment, whatever may have been the trial court's reason for granting it. *Southern Farm Bureau Casualty Ins. Co.* v. *Reed,* 231 Ark. 759, 332 S. W. 2d 615. The failure of appellee to argue the point or cite authority on it is immaterial. *Miller* v. *Dyer,* 243 Ark. 981, 423 S. W. 2d 275.

Even if appellee had failed to file any brief whatever, this would not have warranted automatic relief to appellant. The burden is always on the appellant to demonstrate error in the decree. *Poindexter* v. *Cole,* 239 Ark. 471, 389 S. W. 2d 869. If he does not do so we affirm on trial de novo even though the reasons for the chancellor's decree are unsound, if upon the whole record a correct result has been reached. *Culberhouse* v. *Hawthorne,* 107 Ark. 462, 156 S. W. 421.

I really feel that the chancellor's findings in this case, where only slight excuse for holding over was given, are an expression of equity's abhorrence for penalties, without direct statement of the maxim, if indeed the court's reliance thereon is of any significance.

We are not able to say exactly what issues were presented to the chancery court. Appellant unquestion-

ably asked double damages as a counterclaim in its answer. Appellant's motion for summary judgment was filed simultaneously with its answer. Appellee's response to this motion alleged that there was a genuine issue as to material fact, that appellant was not entitled to judgment as a matter of law and that appellee was entitled to prevail in the case. No other pleading controverting the counterclaim was then due and none has ever been filed. The motion for summary judgment was taken under submission for later action by the chancellor 17 days after it was filed. Appellee did file a $60,000 bond to retain possession and an answer to appellant's complaint in an unlawful detainer action instituted by appellant in the Circuit Court of Drew County after the filing of the findings of the chancellor on appellant's motion for summary judgment but before entry of the court's decree. In appellee's answer in the later action, he alleged that appellant was not entitled to damages equal to double the rental value of the lands under Ark. Stat. Ann. § 50-509 (1947), but was entitled to recover only the share crop rents upon said lands due or to become due from appellee to appellant. This action was dismissed on motion of appellant on December 4, 1969. The order of dismissal discharged the surety on appellant's unlawful detainer bond. That record was specifically made a part of the record in this case.

While we know the reasons given by the chancellor for refusing to enforce the penalty, we do not know, and cannot know, what arguments were advanced by appellee in the chancery court. Where the court proceeded to a hearing upon appellant's counterclaim without any attempt being made to require a reply thereto, the failure to require the reply was a waiver thereof. *Cribbs* v. *Walker,* 74 Ark. 104, 85 S. W. 244, on rehearing. No default was sought, so all questions raised by the counterclaim were at issue (if indeed it is necessary to plead equity's abhorrence for penalties). *Pembroke* v. *Logan,* 71 Ark. 364, 74 S. W. 297; *Hill* v. *Imboden,* 146 Ark. 99, 225 S. W. 330.

Relief in equity should be granted as warranted by the facts, not on a request for that relief where there is

no prayer and the relief is apparent from the facts alleged or where the prayer for relief is general. See *Sannoner* v. *Jacobson & Co.*, 47 Ark. 31, 14 S. W. 458, *Cook* v. *Bronaugh*, 13 Ark. 183; *Kelly's Heirs* v. *McGuire*, 15 Ark. 555; *Ross* v. *Davis*, 17 Ark. 113; *Shields* v. *Trammell*, 19 Ark. 51; *Rogers* v. *Brooks*, 30 Ark. 612; *Morgan* v. *Scott-Mayer Comm. Co.*, 185 Ark. 637, 48 S. W. 2d 838; *Grytbak* v. *Grytbak* (on rehearing), 216 Ark. 674, 227 S. W. 2d 633; *Smith* v. *Smith*, 219 Ark. 304, 241 S. W. 2d 113; *Taylor* v. *Taylor*, 224 Ark. 328, 273 S. W. 2d 22.

I do consider the cases of *Cooley* v. *Lovewell*, 95 Ark. 567, 130 S. W. 574, and *Hendrix* v. *Black*, 132 Ark. 473, 201 S. W. 283, to be applicable and the authorities on chancery enforcement of penalties cited in the majority opinion inapplicable. I suggest that the parties moving for summary judgment against the sheriff under Chapter 94, Kirby's Digest [Ark. Stat. Ann. § 29-209 et seq. (Repl. 1962)] in *Cooley* had no choice of forum, since the decree under which they claimed was rendered in the chancery court and the officer acted under the processes of that court.

Language from *Augusta Cooperage Company v. Bloch*, 153 Ark. 133, 239 S. W. 760, relied upon by the majority is dictum. Furthermore, we clearly held that the defendant's responsive pleading entitled him to a transfer to equity, a situation quite different from that prevailing here. The plaintiff there could not have prevented the transfer or obtained a retransfer. In *Dickson* v. *Love*, 149 Ark. 669, 233 S. W. 800, not cited by the majority, we found a liability for treble damages for a part of the period for which the plaintiff had sought to recover, but the removal of the action to chancery was based upon defendant's prayer for the equitable remedy of specific performance, which the court granted.

I do not take the decision in *United States* v. *Flint Lumber Co.*, 87 Ark. 80, 112 S. W. 217, to be authoritative here. There was no question of a statutory penalty involved there, nor do I see the damages as punitive

damages, as that term is usually employed. All that we did in that case was to apply the common law distinction between the measure of damages for an unintentional trespass and that for a wilful trespass. In the former case the measure is the value of the property in its converted state at the time of trial, less labor expended by the trespasser. In the latter, it is the value of the property at the time of trial in its converted form without deduction for the trespasser's labor and expense in the enhancement of its value. See *Eaton* v. *Langley*, 65 Ark. 448, 47 S. W. 123, 42 L. R. A. 474; *Woodenware Co.* v. *United States,* 106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230; *Hudson* v. *Burton,* 158 Ark. 619, 250 S. W. 898. I also suggest that the intervener in *Flint* may well have been restricted to the chancery forum. The pleading was filed in an insolvency proceeding in which a receiver had been appointed. By it the United States sought to recover tort damages. It is generally held that consent of the appointing court is essential to the prosecution of a suit against the receiver in another court, in the absence of waiver. See 75 C. J. S. 1004, et seq., Receivers § 333; *Walker* v. *Taylor,* 185 Ark. 980, 50 S. W. 2d 590; *Ratcliff* v. *Adler,* 71 Ark. 269, 72 S. W. 896.

Appellant has not been imprisoned in the equity court, and the compulsory counterclaim act did not hold it there. It has not at any time sought a transfer of the case to the circuit court, even after filing its unlawful detainer suit or after our remand. This omission was pointed out by the chancellor in his findings on appellant's motion for summary judgment prior to the first appeal, when he said:

The reason the issue is considered is because the action sounds in Forcible Entry and Detainer, Section 34-1501, et seq of the Statutes of Arkansas, and Courts of Chancery are without jurisdiction of said actions, see *McPherson* v. *Hicks* 338 S. W. (2) 201 (p. 203), 232 Ark. 427. * * * despite the fact that the action sounds in Forcible Entry and Detainer, Sigmon does not raise the issue of Jurisdiction and does not plead for possession of the land in issue.

On the first appeal, the chancellor's decree was rendered upon appellant's motion for summary judgment, which was denied. The issues had not even been made on the counterclaim for double damages, as appellee had not filed any responsive pleading.

If appellant desired to avoid application of the principles of equity in this litigation, he was free at any time to move to transfer the case to the circuit court. Appellee's complaint did not state a cause of action in equity. See *Gray* v. *Malone,* 142 Ark. 609, 219 S. W. 742; *Fletcher* v. *Pfeifer,* 103 Ark. 318, 146 S. W. 864; *Comer* v. *Woods,* 210 Ark. 351, 195 S. W. 2d 542.

When a complaint fails to state an equitable cause of action, or the admitted facts show that the plaintiff had no such cause of action, the cause should be transferred to the circuit court upon motion to transfer by the defendant. Ark. Stat. Ann. §§ 27-208 (Repl. 1962), 22-405 (Repl. 1962); *Rowe* v. *Allison,* 87 Ark. 206, 112 S. W. 395. See also Ark. Stat. Ann. § 27-210 (Repl. 1962).

The compulsory counterclaim statute did not affect appellant's right to a transfer in any way. See *Wright* v. *Lake,* 178 Ark. 1184, 13 S. W. 2d 826. The motion might have been made before or after the filing of the answer and counterclaim. *Ponder* v. *Jefferson, Standard Life Ins. Co.,* 194 Ark. 829, 109 S. W. 2d 946. The entertainment of such a motion when made after trial without objection, after submission of the case, and after pronouncement but before entry of a decree, is a matter of discretion with the trial court. *Arkansas Const. Co.* v. *Pidgeon-Thomas Iron Co.,* 172 Ark. 721, 291 S. W. 57. If the grounds for transfer did not adequately appear upon the face of the pleadings, then appellant could have presented proof to show that the issues were purely legal ones. *Haggart* v. *Ranney,* 73 Ark. 344, 84 S. W. 703. Appellant might even have made such a motion after remand. *American Surety Co.* v. *Vann,* 135 Ark. 291, 205 S. W. 646. Not having moved to transfer the case, appellant waived its right to do so by going to trial and is in no position to complain when the case is tried as an ordinary action in chancery and equitable principles and

procedures are applied and equitable remedies granted. Ark. Stat. Ann. § 27-211 (Repl. 1962); *Hemphill* v. *Lewis,* 174 Ark. 224, 294 S. W. 1010; *Sledge-Norfleet Co.* v. *Matkins,* 154 Ark. 509, 243 S. W. 289; *Organ* v. *Memphis & L. R. R. Co.,* 51 Ark. 235, 11 S. W. 96. See also *Childs* v. *Magnolia Petroleum Co.,* 191 Ark. 83, 83 S. W. 2d 547; *Gray* v. *Malone,* 142 Ark. 609, 219 S. W. 742; *Sessoms* v. *Ballard,* 160 Ark. 146, 254 S. W. 446; *Catchings* v. *Harcrow,* 49 Ark. 20, 3 S. W. 884; *Pratt* v. *Frazer,* 95 Ark. 405, 129 S. W. 1088. Relief from penalties is peculiarly in the field of equity and, were it not for statute, relief might, under proper circumstances, even be granted after judgment at law. *Nevada County* v. *Hicks,* 38 Ark. 557; Ark. Stat. Ann. § 50-510 (1947).

The majority seeks to apply the law of the case as a bar to affirmance. I submit that this harsh but necessary rule should have no application here. I repeat that the issues had not been made by pleadings at the time of the chancery court's decision on the motion for summary judgment before us on the first appeal. We then decided that the chancellor correctly held that six months' notice of termination was not required, but erred in holding that a three-day notice under Ark. Stat. Ann. § 34-1503 (Repl. 1962) was necessary. We only speculated that notice given by appellant by letter to appellee was a predicate for a claim for double damages under Ark. Stat. Ann. § 50-509 (1947). We said:

There is, however, one fact definitely left for determination. Section 50-509 provides that one who willfully holds over, thus preventing possession to the person entitled thereto, shall pay the person so kept out of possession double the yearly rent of the lands detained *for all the time he shall keep the person entitled thereto out of possession.* This record does not reflect for how long the appellant has been, or will be, kept from possession, and this fact will have to be determined at another hearing. Also, while there is nothing in the record before us which reflects that appellee acted in good faith in not surrendering the premises, inasmuch as the case is being remanded anyway, we think it proper to permit

Scroggins to offer competent evidence of his reasons for withholding possession. In *Lesser-Goldman Cotton Company* v. *Fletcher*, 153 Ark. 17, 239 S. W. 742, this court pointed out that, under the statute:

> "* * * to entitle the landlord or lessor to double rents after the termination of the lease term, the holding over by the tenant must be done willfully. The statute is highly penal, must be strictly construed, and cannot be extended by intendment beyond its express terms. A holding over by the tenant under the *bona fide* belief that he has the right to do so, even though he were mistaken, is not a willful or contumacious holding under the statute where the undisputed facts show, as they do here, that there were reasonable grounds for such belief."

The decree is reversed and the cause is remanded for the determination of the two issues mentioned.

Our mandate directed that the cause be remanded to the chancery court "for further proceedings to be therein had *according to the principles of equity* and not inconsistent with the opinion herein delivered." (Emphasis mine.)

As mentioned in the opinion on the earlier appeal, there was a cross-appeal then by appellee. Since we reversed on the direct appeal, we said no more about the cross-appeal. In it appellee asserted that the chancellor erred in disposing of the litigation on motion for summary judgment because there were several issues of fact upon which testimony should have been heard. In his response to appellant, appellee stated in his brief:

> In addition, the lower court correctly noted that Arkansas Statute Section 50-509 has no application to this case. *Lesser-Goldman Cotton Co.* v. *Fletcher*, 153 Ark. 17, 239 S. W. 742. The appellee is holding possession of the lands in question under a claim of right arising under a written lease, and the proper action on the part of appellant to regain

possession of these lands and to determine the rights of the parties is an action of unlawful detainer. Only the circuit court has jurisdiction of such an action and not the chancery court.

In its answer filed in this cause the appellant does not ask to be granted possession of the lands, but only to dissolve the restraining order and for double damages. The only remedy which the appellee had was a petition for a restraining order in the chancery court to enjoin the appellant from interfering with the appellee's right to possession of the demised lands.

On March 11, 1969, the appellant did file an unlawful detainer action in the circuit court of Drew County, Arkansas, cause No. 2151, and this case is now pending in the Circuit Court of Drew County, Arkansas.

In an unlawful detainer action the measure of damages is the reasonable rental value of the lands detained, in the case of farm lands, and for injuries caused by their detention.

On June 17, 1969, the appellant gave appellee the required six months notice to vacate the lands in question and on July 10, 1969, appellee gave written notice to appellant that he would vacate the said lands on January 18, 1970, and deliver possession to appellant.

Arkansas Statute Section 50-509 has no application to the case now before this court and appellant is not entitled to double damages.

It seems to me that there was and is an issue not decided on the former appeal which leaves the present question open for our present consideration. The former opinion has become binding as the law of the case only to the extent that the *questions* there involved were *decided. Baker* v. *State,* 201 Ark. 652, 147 S. W. 2d 17. It is only the *law* specifically declared on the first appeal

that must be followed. In *Linograph Co. v. Bost,* 180 Ark. 1116, 24 S. W. 2d 321, we said:

> Where a case has been to the Supreme Court and been reversed, the law announced on the former appeal is the law of the case. Propositions of law once decided by an appellate court are not open to reconsideration in that court upon a subsequent appeal. Whatever was decided on the first appeal remains the law of the case for all further proceedings. *Morris & Co. v. Alexander & Co.,* 180 Ark. 735, 22 S. W. 2d 558; *Fentress v. City National Bank,* 172 Ark. 711, 290 S. W. 58. However, the decision on former appeal is the law of the case as to so much of the case as was adjudicated. *Henry v. Irby,* 175 Ark. 614, 1 S. W. 2d 49; *Chicago Mill & Lumber Co. v. Osceola Land Co.,* 94 Ark. 183, 126 S. W. 380.

> The only question adjudicated in this case on former appeal was the right of appellant to maintain the suit. This question was settled on the former appeal and cannot be reconsidered. The other issue raised by the pleadings was not adjudicated on former appeal and is not res adjudicata.

We have previously permitted new issues to be raised on a retrial after reversal and remand. For instance, in *American Surety Co. of N. Y. v. Kinnear Manufacturing Co.,* 185 Ark. 959, 50 S. W. 2d 586, this court refused to apply the "law of the case" from a previous appeal. Upon remand the complaint was amended to allege that an architect was guilty of such inattention and indifference as to imply bad faith. This issue was then submitted to the jury under instructions correctly declaring the law on that subject. On the previous appeal, the court had held a different instruction touching upon the issue, as then presented, to be correct. The reversal was for failure to give that instruction. Thus, one of the parties was permitted, upon retrial, to raise a new issue.

In *Morgan Engineering Co. v. Cache R. Drain. Dist.,* 169 Ark. 473, 275 S. W. 741, the court refused to apply the doctrine. The appellant contended that the

circuit court, on trial after remand, was foreclosed from inquiring into the validity of a contract. It asserted that the language of the opinion on the former appeal was an adjudication of the binding effect of the contract and that the trial court and the parties were bound under the law of the case. The reversal on the former appeal was based upon the failure of the trial court to take proof of the value of services rendered under the contract and to find for appellant for that amount. On retrial, an issue was made as to the validity of the appellee district and, incidentally, the validity of the contract. In referring to authorities cited by appellant, we said that those decisions simply announced and adhered to the rule that where an issue had been raised in the court below and has been finally adjudicated on appeal to the Supreme Court the same issue cannot be reopened on another trial. We also said that a remand for further proceedings in accordance with the opinion was in effect a remand for a new trial on the issues that might be presented, and contemplated that proof might be introduced on those issues.

I would affirm on appeal and cross-appeal.