WARE *v.* WHITE.

Opinion delivered December 3, 1906.

1. MINING CLAIM—ADVERSE SUIT.—An "adverse suit," authorized by Rev. Stat. U. S., § 2326, to be brought in a court of competent jurisdiction "to determine the question of right of possession of a mining claim on Government land, in order that the Government officers may patent the claim to the party establishing right thereto," is a law action, and contains no element of equity jurisdiction. (Page 223.)

2. SAME—LOCATION NOTICE.—In order to secure a valid location of a mining claim, it is necessary that the claim should be "distinctly marked on the ground so that its boundaries can be readily traced," and that it contain a reference to some natural object by which it can be identified. (Page 223.)

3. SAME—AMENDMENT OF LOCATION NOTICE.—A mining claimant has a right to amend his location notice and mark the claim on the ground, if there are no intervening rights. (Page 225.)

4. SAME—EFFECT OF AMENDMENT OF LOCATION NOTICE.—An amendment of a mining location by a claimant not in possession can not be made

to relate back to the original location so as to cut out intervening work for three years under a defective location. (Page 225.)

5. SAME—RELOCATION.—A mining claim in the adverse possession of another is not subject to relocation. (Page 226.)

6. SAME—POSSESSION.—Possession of a mining claim may be founded on complete compliance with the mining laws and local regulations or by physical marks or distinct marking of the ground evidencing possession. (Page 226.)

7. SAME—PRESUMPTION AS TO POSSESSION.—While possession and improvement alone do not establish title to a mining claim, they raise a *prima facie* presumption that the possession is rightful, which prevails, in the absence of proof of a better right. (Page 226.)

8. EJECTMENT—MINING CLAIM.—Where a complaint alleged that plaintiffs were entitled to possession of a mining claim, and asked for possession, and that defendants be ejected therefrom, and the answer admitted possession and claimed title, the pleadings formed an issue as to the possession, and the action is in ejectment. (Page 227.)

9. MINING CLAIM—LOCATION.—A mere disconnected marking of a mining claim, not accompanied by possession or the required work, does not constitute a location within the acts of Congress. (Page 228.)

10. SAME—AMENDMENT OF LOCATION—RIGHT TO PATENT.—One who is in actual possession of a mining claim and has done the required work may amend his location notice, and thereby perfect his entry; and, even without a valid location notice, if he can peacefully hold possession against the world and do the requisite work for the required time, he will be entitled to a patent. (Page 228.)

Appeal from Marion Chancery Court; *T. H. Humphreys,* Chancellor; reversed.

*Woods Bros.,* for appellant.

1. Appellee's notice of their alleged location in September, 1899, was insufficient, in that it was not posted on the land claimed. It also failed to conform to the requirements of § 2324, U. S. Rev. Stat., in failing to describe the location with reference to natural objects or permanent monuments so as to identify the claim.

2. If appellees acquired any rights under such location, they have forfeited the same by failure to do the assessment work required by law. Section 2324 *supra;* 73 Ark. 610; 72 Ark. 225; 70 Ark. 525.

*W. S. Chastain,* for appellee.

1. Neither the Federal nor the State laws require that notice of location be posted. 111 U. S. 356; 1 Snyder on Mines, § 374; 1 Lindley on Mines, 350; Barringer & Adams on Mines, 234. If posting or recording is required, it must come from some local rule or custom of the district, and none is proved. 99 U. S. 261; 1 Snyder on Mines, § 128.

2. The question of forfeiture does not enter into this case. It is simply a question of who has the valid location. If appellant's attempted amended location of May 10 and September 26, 1904, were good, he can not rely on the deeds made by his co-locators to him, and received prior to that time, because they were only quitclaim deeds. Kirby's Digest, § 734; 76 Ark. 417. No rights were acquired under the notices made by appellant in 1898. They do not comply with the act of Congress, and are void on their face. U. S. Rev. Stat. § 2324. Appellee's notices of September, 1899, were similarly defective, and within themselves conferred no rights, but appellees did take actual possession of the lands at that time. When, in August, 1903, appellees procured the services of the county surveyor, went upon the lands, had same surveyed and the "location distinctly marked on the ground so that its boundaries could be readily traced," this gave appellees all rights of possession against the Government, and against all claimants who did not hold a valid location. 113 U. S. 527; White on Mines and Mining Rem. § 35.

HILL, C. J. White and associates in a zinc mining venture brought suit in the August, 1903, term of the Marion Circuit Court against Ware and associates to recover possession of the E½ SW¼ sec. 21, T. 18 S., R. 15 W., asserting possessory right thereto as a mining claim acquired as follows: That, by virtue of making discovery of mineral on the land, then wild and unoccupied Government land, and posting location notice thereon September 27, 1899, and doing the necessary assessment work for 1900, 1901 and 1902, and complying with the mining laws of the United States and the State and the local rules and regulations of the Marion County Mining District, they had acquired possessory right to it, and that Ware had made application for it to the United States Land Office, and they (White and associates) had in proper time filed therein their adverse claim to Ware's claim, and they prayed that Ware be ejected and posses-

sion given to them. Ware and associates admitted possession, and denied plaintiffs' title, and asserted title in themselves, which they set forth fully, and prayed that plaintiffs' complaint be dismissed, and that their possession and title be quieted and confirmed. On motion of plaintiffs, which was conceded by defendants, the cause was transferred to Marion Chancery Court, and there progressed to decree in favor of plaintiffs, and the defendants prosecuted this appeal.

This was an "adverse suit" authorized by sec. 2326, Rev. Stat. of the United States, to be brought in a court of competent jurisdiction "to determine the question of right of possession" of a mining claim on Government land, in order that the Government officers may patent the claim to the party establishing right thereto in such possessory action. *Giberson* v. *Wilson,* 79 Ark. 581. The action is essentially a law action, and contains no elements of equity jurisdiction, and the answer herein presented no equitable defense.

Under the decision in *Collins* v. *Paepcke-Leicht Lumber Co.,* 74 Ark. 81 (to the correctness of which two members of the court do not subscribe), the decree is not reversible for lack of jurisdiction in the chancery court because appellants did not insist on a trial at law in the lower court. The appellant does not raise the question now, but the court mentions it so that it may be understood how this law suit is determined as a chancery suit.

Passing to the merits, or more properly, demerits, of the conflicting claims, it is found:

That the appellees (plaintiffs below) purchased rights to two mining locations, which were located in 1898, situated one on each forty of the eighty-acre tract in controversy. On September 27, 1899, they filed notice of location seeking an original location then, and did some assessment work thereafter, which will be referred to later. The claim or location was not "distinctly marked on the ground, so that its boundaries can be readily traced," and the location notice filed did not contain a description of the property, tying it to some natural object by which it could be indentified. These are mandatory provisions of sec. 2324, Rev. Stat. U. S., and must be complied with in order to secure a valid location. *Worthen* v. *Sidway,* 72 Ark. 215.

Appellees in August, 1893, after their adverse claim was filed in the land office and after this suit was instituted, had a surveyor run out the lines and blaze around the entire tract and mark its corners with stones. This was the first attempt of either party to mark the location on the ground, so that its boundaries could be readily traced.

On May 2, 1904, appellees filed an amended notice attempting to follow up the marking on the ground of August, 1903, by proper description tying the location to some natural object for identification. On the 3d of May by supplement to the answer they asserted title by virtue of such marking and amendment having made valid the original location. The court sustained this location.

Prior to attempting a location on this property, appellants examined the records of the mining district and found only the insufficient notice of appellees against this property and no affidavits of having done the assessment work; and proceeded to make a location upon it on January 1, 1900. Their notice is similarly defective, and they likewise failed to mark the claim on the ground, but they did proceed to do the assessment work for three years.

On the trial the appellants gave detailed statements of amount of assessment work done, and its value amounting to $106 for 1901, $124.50 for 1902 and $188 for 1903. This was not controverted, and must be taken as established.

On May 10 and September 26, 1904, appellants also attempted by amendments to their notice to cure its defects, and pleaded the same in supplement to their answer.

The appellee White in his testimony claims to have receipts for $400 worth of assessment work, but does not give a definite statement of what was done or its value. Stegall, a witness for appellees, says that in 1901 he and three others did five days' assessment work, and he was paid $1.25 per day for his work, and he knows one of the other workmen was paid that amount. He also testifies to doing some assessment work each year which appellees claim to have done work, but he does not prove that the requisite work each year, or any year, was done by appellees. Treat, likewise for appellees, lived near the land, and saw the assessment work, and said it was worth

as much, or more, than assessment work by others. This was all the evidence to sustain appellees' claim of having done the annual assessment work, and they did not file the affidavits authorized by section 5364, Kirby's Digest, which makes such affidavits *prima facie* evidence of the performance of the work.

The appellants showed by one Ott that he was one of the four men employed by appellees to do the assessment work in 1901, and that they were instructed to do five days' work each—20 days' work in all—and that was all the assessment work done by appellees for that year on this claim. There was other evidence showing appellees' total work for the four years was worth about $100. Very likely appellees were proceeding under a custom or mining regulation providing for twenty days' work to count as the requisite $100 worth of work required by the Federal statute, which custom and regulation was held to be in contravention of said statute by this court in *Woody* v. *Bernard,* 69 Ark. 579. Be that as it may, it must be taken as established that the appellees failed to do the requisite assessment work under their 1899 location. Up to the amended location neither party had a valid location; the appellees failed for defects in notice and in marking the ground and further failed to do the assessment work, and appellants failed in the same particulars except as to doing the assessment work.

Concede, without deciding, that plaintiffs could amend their pleadings so as to assert new rights at this time, the complaint alleged appellants to be in possession, the answer admitted it, and three years' assessment work under a defective notice had been performed by them, and they had a right to amend their location notice and mark the claim on the ground, there being no intervening rights. 1 Snyder on Mines, § § 395 425, 429 & 577.

The appellants had something to amend to, while appellees had nothing to tack their amendment to. An amendment can not relate back and cut out intervening rights. The doctrine of relation can not be invoked to exclude rights built up in the interval which is sought to be covered by the relation back. 1 Snyder on Mines, § 429. Therefore it is plain that the amendment of appellees of May 2, 1904, could not relate back to their

defective location of 1899 and cure it in order to defeat rights built up by appellants after the 1899 location.

The case then resolves itself into an inquiry whether appellees' location of May 2, 1904, can be regarded as an original location, or relocation, and valid as such. It did not purport to be such, but purported to be an amendment seeking to make valid the 1899 location, and it was pleaded and relied upon as an amendment, and not as an original location, but, aside from this, it could not be a valid location or relocation. If anything, this would amount to a relocation by the original locators (1 Snyder on Mines, § § 583, 584) ; and for the relocation, as well as location, the land must be subject to location, and this land was not then subject to location on account of the rights and possession of appellants. At this date they had a right, as against the Government and every one else, to perfect their location, and their improvements had given them possession of the land. Possession may be founded on complete compliance with the mining laws and local regulations or by physical marks or distinct marking of the ground evidencing possession. Possession and improvement alone give no value to a mining claim, but raise a *prima facie* presumption that the possession is rightful. This subject is fully discussed in 1 Snyder on Mines, § § 452, 457.

Whether appellants' possession was aided by section 5363, Kirby's Digest, is not important because the *prima facie* presumption of the rightfulness of appellants' possession alone prevents the land being subject to original location as wild and unimproved mineral land.

The appellants' compliance with the law requiring $100 worth of improvements per annum under a defective location notice gave them a possessory right which is presumed rightful, in the absence of a better right being shown.

The appellees failed in every particular to comply with the mining law, and all rights they had, if any, were forfeited by a failure to do the assessment work. When they attempted to amend their location, they were met with these propositions: (1) They can not cut out other rights by relation, hence the former location can not be patched up against appellants; and (2) they can not make a new location, for the appellants are

found in possession of the property improving it under the mining laws, and the validity of the latter location is not the inquiry. *Malecek* v. *Tinsley,* 73 Ark. 610.

Reverse and remand with directions to dismiss the complaint.

Mr. Justice BATTLE thinks the court should stop at the jurisdictional question, and remand for want of jurisdiction in the chancery court.

## ON REHEARING.

### Opinion delivered January 14, 1907.

HILL, C. J.   1.   Appellees insist that the complaint is sufficient to be sustained as a complaint in equity to confirm title, under chapter 25, Kirby's Digest, and that it does not, taken as a whole, allege that the defendants were in possession. It asserts a possessory right in themselves; that the defendants (appellants here) assert some claim to it and have pending in the United States Land Office an application for it, and they, plaintiffs, have filed their adverse claim therein, and, after asserting right to possession as a mining claim, plaintiffs pray for possession, and that the defendants be ejected from the land therein described, and for costs and general relief. The defendant in answer "admits he is in possession of the land mentioned and described in the complaint," and then asserts title thereto. Certainly, these pleadings put the possession of the land in the defendants, and form an issue as to the rightful possessory title thereto; essentially an action of ejectment.

2.   Appellees contend that they were peacefully in possession when appellants surreptitiously proceeded to attempt a location, which was defective in many respects. The evidence does not sustain appellees' contentions. The evidence shows that they never held possession of the land, and never had any possession of it except such scrambling possession as accompanied their wholly insufficient assessment work.

The failure to do the assessment work forfeited whatever original rights they may have had, but they had a right to resume work unless other rights intervened, and appellees contend that this principle applies to them; but they never did *bona fide* work,

and never had anything to tie back to. Whatever rights they have must be builded on the May 2, 1904, location. In August, 1903, they had the ground surveyed and the lines blazed, not in view of a new location, but to establish evidence in this suit. Later, when a new location, or amendment as it was called, was made, then this survey of the year before was relied upon as marking the claim on the ground. The Supreme Court of the United States said: "The right to possession comes only from a valid location. Consequently, if there is no location, there can be no possession under it. Location does not necessarily follow from possession, but possession from location. A location is not made by taking possession alone, but by marking on the ground, recording and doing whatever else is required for that purpose by the acts of Congress and the local terms and regulations." *Belk* v. *Meagher,* 104 U. S. 279.

The disconnected marking of the claim on the ground of August, 1903, the new location of May 2, 1904, unaccompanied by work and without actual possession, are insufficient to bring these parties within the above requirements.

On the other hand, Ware had the possession contemplated of mining claims by the actual physical work required, and the work was there as evidence of possession; and, as shown, in the absence of intervening rights, he could amend and thereby perfect his entry. In addition to this, even without a valid location notice, if he could peacefully hold possession against the world and do the requisite work for the required time, he could get a patent. *Belk* v. *Meagher, supra.*

This possession is merely *prima facie* rightful. It was at least sufficient to sustain an action of trespass against an intruder, but not enough to prevent recovery by one who had made peaceful entry and in good faith made a valid location of it; but, as seen, appellees' evidence fails to bring them into that class.

The court has not held, and does not hold, that Ware has title. It is merely holding that Ware's possession and requisite annual assessment work under a defective location is sufficient to defeat a recovery on a patched relocation where there is no peaceful entry and possession of the land nor work done under it. The question of appellants' title is not for adjudication,

but appellees'; and for the reasons given appellees must fail in this action.

The court might well have disposed of the case on the ground that this action could not be maintained on after-acquired title. That question was not presented, and these others were; and, as they both work out to the same end, the court preferred placing its decision on the ground discussed.

Motion overruled.

WOOD and RIDDICK, JJ., dissent.