THE ARKANSAS STATE POLICE COMMISSION *v.*
B. G. DAVIDSON

5-5847                                          477 S.W. 2d 852

Opinion delivered March 20, 1972.

*Ray Thornton,* Atty. Gen., by: *Henry Ginger,* Deputy
Atty. Gen., for appellant.

*Jerry J. Screeton, F. Russell Rogers* and *James M.
Thweatt,* for appellee.

CARLETON HARRIS, Chief Justice. Petitioner, B. G. Da-
vidson, was a member of the Arkansas State Police Force
until July 22, 1971, when he was notified by the Director
of the Police Services Division of the Department of
Public Safety, Colonel William Miller, that he had been
dismissed from the division on the grounds that he
had violated Section 111.050 of the Arkansas State Police
Manual.[1] The letter advised that the dismissal was effec-
tive on that date, but that Davidson would remain on the
payroll until he had received pay for vacation time which
had accrued to him; further, "I wish you success in any

---

[1] "Section 111.050—Court Costs A-No fee shall be allowed to any member
of the Department for the arrest or transportation of persons arrested. No ex-
pert witness fees shall be allowed and no other fees granted except as pro-
vided by law."

138

endeavor in which you may engage". Thereafter, Davidson, in accordance with the provisions of Ark. Stat. Ann. § 42-406 (d) (Repl. 1964), requested a hearing on the charges before the commission, which was granted, the chairman of the commission notifying Davidson on July 30, 1971 that the hearing would be conducted at 2:00 p.m. on Thursday, August 19, 1971, at State Police Headquarters in Little Rock. On August 18, 1971, Davidson filed a petition with the Chancery Court of Pulaski County in which he alleged that the commission had previously followed the practice of hearing appeals by a dismissed trooper in executive season, barring the public and the press from its hearings. Davidson alleged that a motion had been filed on August 11 with the commission wherein petitioner requested that the hearing be conducted as a public meeting, open to the press, and to all persons who might have an interest in the disposition of the case, that appellant responded:

"That the hearing to be held by the Commission on Thursday, August 19, 1971, is for the purpose of making a determination on a personnel matter. Matters concerning personnel may be considered by the Commission in Executive Session and a public meeting is not required. It is the position of the Division of Police Services that the matter of the reinstatement of B. G. Davidson is a personnel matter and that personnel matters can and should be heard and resolved in Executive Session by the Commission."

This response was delivered to counsel for appellee in the Attorney General's office.

Davidson asserted that the Arkansas State Police Commission would bar the press and public unless the commission was enjoined and restrained from doing so; that a closed hearing of the case would be in derogation of his civil rights and in derogation of the public interest; in paragraph 8 of his petition, Davidson stated:

"The petitioner expressly alleges that the refusal of the Commission to grant him a public hearing is motivated by its desire to prevent him from properly presenting his case and obtaining a fair final adjudi-

cation thereof, in which matter the public has a vital interest and is further made to prevent the Arkansas State Police Department from being embarrassed about the decision made by Col. William C. Miller and Mr. Hal Brueggeman in dismissing this petitioner without justification and apparently for political motives and the petitioner states that he is without means to have his case fairly adjudicated unless the public is permitted to attend his hearing and form its own impressions and evaluations of the procedures and deliberations of the Arkansas State Police Commission."

It was pointed out that unless the court granted the restraining order, petitioner would have no opportunity for a public hearing, in that the witnesses would be heard in executive session, and any appeal from an adverse decision to the circuit court would be decided by that court entirely on the record prepared before the commission.[2] Davidson prayed that the court issue a temporary injunction restraining the commission from barring the press and public from the hearing and that on final hearing the injunction be made permanent. The temporary injunction was granted, and subsequently, the commission responded to the petition by demurrer, asserting that petitioner had a complete and adequate remedy at law; that his petition amounted to a request for a writ of mandamus upon respondents and that the issuance of such writ was beyond the jurisdiction of the chancery court. The demurrer was overruled and the court proceeded to enter its injunction restraining and enjoining appellant from barring the public and news media from any hearing it may hold concerning the appeal of Davidson from his dismissal. From the decree so entered, appellant brings this appeal.

We agree with appellant that, in substance, this was a suit for mandamus, rather than a petition for injunctive relief. Let it be remembered that appellee asked for a hearing on his dismissal, and to this, he was clearly entitled under the statute; had the commission denied a hearing, Davidson would have been entitled to a writ of

[2]See Ark. Stat. Ann. § 42-406 (d) (Repl. 1964).

mandamus from the circuit court. Appellee is thus in the position of, on the one hand, asking for a hearing, and on the other hand, asking that the type of hearing offered be enjoined. In effect, this can mean but one thing, *viz*, that Davidson *is demanding a particular type of hearing*. The fact that the litigation is really a petition for mandamus can best be shown by a determination of whether Davidson, as the matter now stands, has obtained the entire relief sought. The answer is distinctly in the negative, for if appellee is to obtain the relief he desires (reinstatement), there must be a hearing—and he wants the hearing—but he desires that the commission be compelled to conduct it in a certain manner. To illistrate, suppose that the commission decides to let the matter stand "as is" i.e., hold no hearing (and it has never been ordered by any court to hold a hearing, only not to bar the press from any hearing held). Davidson's only recourse would be to apply to the circuit court *for mandamus*, the chancery court having no authority to issue this writ.

That the proper remedy was mandamus is recognized by appellee himself for in Paragraph 9 of his petition to the chancery court, he stated:

> "The petitioner states that due to the time element he cannot seek a mandamus against the Commission, which requires a notice of from two to seven days[3] and that he will have his case heard at a closed hearing of the respondent Commission unless this court enjoins temporarily, and then permanently, the Commission from closing the hearing to the press and the public ***"

Subsequently, after the granting of the restraining order, a petition for mandamus was filed in the Pulaski County Circuit Court but that court, by letter of August 31, denied the petition for the writ, stating:

> "In my studied opinion the petitioner is seeking by way of mandamus to establish a right to have any hearing conducted by the Arkansas State Police Com-

---

[3]Ark. Stat. Ann. § 33-106 (Repl. 1962) provides that petitions for writs of mandamus and writs of prohibition shall be heard no earlier than two days and no longer than seven days, after the filing of the application for such a writ.

mission to be open to the news media; that manda-
mus may be used to enforce a right only after same
has been once established. The question of whether
Mr. Davidson is entitled to have an open hearing
is the subject matter of litigation in the Pulaski Coun-
ty Chancery Court. It is self-evident from the record
in this case that the Police Commission stands ready
to provide Mr. Davidson with the required hearing
but the controversy exists between the parties as to
what I shall term a 'closed' or 'open' door hearing.
Since the jurisdiction of the Chancery Court was in-
voked the matter will have to be finally adjudicated
by that Court before this Court could entertain
petitioner's plea for Writ of Mandamus."

We held in *Nethercutt* v. *Pulaski County Special
School District,* 248 Ark. 143, 450 S.W. 2d 777, that juris-
diction of writs of mandamus, being traditionally com-
mon law writs, is restricted to and vested solely in the
circuit court. Since we have said that the present action
is, in effect, an action for mandamus, it follows that the
chancery court had no jurisdiction and should not have
entered the order complained of. Rather, that court
should have transferred the cause to the circuit court. In
*Rowe* v. *Allison,* 87 Ark. 206, 112 S.W. 395, this court
cited section 5991 of Kirby's Digest, which is identical to
Ark. Stat. Ann. § 27-208 (Repl. 1962), reading as fol-
lows:

"An error of the plaintiff as to the kind of proceed-
ings adopted shall not cause the abatement or dis-
missal of the action, but merely a change into the
proper proceedings by an amendment in the pleadings
and a transfer of the action to the proper docket."

The court then went on to say:

"Had the defendants taken issue upon the allegations
of the complaint, and not demurred to the com-
plaint, nor moved to transfer, then, under the decisions
in *Cribbs* v. *Walker,* 74 Ark. 104; *Collins* v. *Paepcke-
Leicht Lbr. Co.,* 74 Ark. 81; *Ware* v. *White,* 81
Ark. 220, the court would proceed to consider the

case as if tried in the proper forum. But the defendants challenged the jurisdiction of the chancery court by demurring on the ground that the complaint did not show a cause of action. These demurrers should have been sustained and the complaint dismissed if it were not for the provisions of the Code above cited. Instead of assuming jurisdiction of the cause, the court should have transferred the action to the circuit court, when the demurrers developed that there was no cause of action in equity, if a couse of action was stated. [citing cases]"

This same holding has been reiterated on various occasions.

Summarizing, the circuit court was the only court which had the authority to grant the relief sought by Davidson, and this being true, the chancery court, when the demurrer was presented, should have transferred the action to the circuit court.

It is so ordered.

FOGLEMAN, J., concurs.

BYRD, J., dissents.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached by the majority and the reasoning of the majority opinion. I also feel that appellee had an adequate remedy at law and this opinion is directed to that point.

I agree that appellee's remedy is by mandamus and that all his pleadings ask that a governmental agency or tribunal be required to hold a *public* hearing. His allegations are based upon the premise that the State Police Commission had no discretion in the matter. The only excuse really given for the application to the chancery court was appellee's inability to have a hearing on a petition for mandamus in less than two days after filing. This did not deprive him of an adequate remedy at law. The circuit court had jurisdiction and authority, in aid of its jurisdiction in the mandamus proceedings, to enter a temporary restraining order to the Police Com-

mission to preserve appellee's rights if it appeared to the court that his rights would be violated before the petition for mandamus could be heard. Ark. Stat. Ann. §§ 32-101, 32-103, 32-201 (Repl. 1952).

The circuit court has inherent power to issue such orders as are necessary to the exercise of its jurisdiction. *Dobbins Bros.* v. *Anderson,* 199 Ark. 635, 135 S.W. 2d 325. See also, *Arkansas Public Service Commission* v. *Arkansas-Missouri Power Co.,* 220 Ark. 39, 246 S.W. 2d 117.

The statute governing mandamus proceedings clearly recognizes this power. Ark. Stat. Ann. § 33-109 (Repl. 1962) reads:

Interlocutory order.—During the pendency of any such proceeding, the court having jurisdiction, or the judge in vacation, may make such temporary orders as appear expedient and proper to prevent injury, waste or damage of whatsoever kind.

Other jurisdictions have found that a court having jurisdiction of mandamus proceedings may issue restraining orders under like circumstances. In *Nationwide Corp.* v. *Northwestern Nat. Life Ins. Co.,* 251 Minn. 255, 87 N.W. 2d 671, 73 A.L.R. 2d 884 (1958) the Minnesota Supreme Court held that such authority existed under a statute which is virtually identical to Ark. Stat. Ann. § 32-103.

More extensive discussion of this power will be found in 42 Am. Jur. 736, et seq., Injunctions, §§ 10, 11, 13, 14 and 55 C.J.S. 575, Mandamus § 329.

Since appellee's remedy at law was adequate and complete, I concur.

CONLEY BYRD, Justice, dissenting. My disagreement with the majority goes to the classification of this action as *"viz,* that Davidson *is demanding a particular type of hearing."* As I view this statement by the majority they are doing an injustice not only to Davidson but also to the Chancellor who only enjoined the Arkansas State

Police Commissioners from barring the press and public from any hearing held in connection with Davidson's appeal.

The record shows that Davidson, a career State policeman, was publicly fired by written letter charging him with having received public monies to which he was not entitled. In accordance with Ark. Stat. Ann. § 42-406 (d) (Repl. 1964) he made written application for reinstatement. The Commission notified him that a hearing would be held on August 19, 1971, at 2:00 p.m. In the meantime Davidson learned that the Commission had been barring the public and the press from such hearings and on August 11, Davidson requested that his petition be considered at a public hearing in accordance with the Freedom of Information Act, Ark. Stat. Ann. §§ 12-2801—12-2807 (Repl. 1968). The Commission did not respond to Davidson's request for a public hearing until 4:05 p.m. August 17, 1971, which did not leave Davidson with enough time to apply for a writ of mandamus [Ark. Stat. Ann. § 33-106 (Repl. 1962) requires a minimum of two days notice as a prerequisite to a hearing on a mandamus petition and in *Savage v. Hawkins*, 239 Ark. 658, 391 S.W. 2d 18 (1965), we held such notice to be mandatory.]

Davidson applied to the Chancery Court for a temporary injunction that was granted on August 19, 1971.[1] At that hearing the Commission objected to the Chancellor's jurisdiction. That afternoon the Commission indefinitely postponed Davidson's appeal for a hearing pursuant to Ark. Stat. Ann. § 42-406 (d). Davidson then applied to the Circuit court for a writ of mandamus to compel the Commission to hold a hearing.[2] The Circuit Court by a letter opinion, copied in the majority opinion, denied any mandamus relief until the Freedom of Information Act controversy was determined in the Chancery action.

---

[1]The only prayer in Davidson's petition was:
"Wherefore, premises considered, petitioner prays that this court issue forthwith a temporary injunction restraining and enjoining the respondents from barring the press and the public from the hearing to be held on August 19, 1971 at 2:00 p.m. on the case of this petitioner; that upon final hearing said injunction be made permanent."

[2]Davidson did not request any relief in this petition under the Freedom of Information Act.

The permanent injunction entered by the Chancellor reads:

> "That this Court has jurisdiction to afford petitioner the relief that he seeks for the above stated reasons, and this Court specifically holds that the Freedom of Information Act applies to this matter, and that the 'personal exclusion provision' in said act does not apply to this matter since the petitioner had not been personnel of the Department of Public Safety since July 22, 1971, when he was officially discharged and his badge and all other muniments of his office were taken away from him.
>
> "IT IS, THEREFORE, CONSIDERED, ORDERED, ADJUDGED AND DECREED by the Court that the Demurrer of the respondents filed herein is overruled, and the Temporary Injunction rendered by this Court on August 19, 1971, should be, and the same is hereby made permanent, and the respondents are permanently restrained and enjoined from barring the public and the news media from any hearing which they may hold in the future concerning the appeal of the petitioner from his dismissal as a State Police Officer; and the Temporary Injunction Bond of $1,000.00 filed herein in cash by James E. Sparks in behalf of the petitioner, should be, and the same is ordered by the Court to be remitted by the Clerk of the Court to the said James E. Sparks, or James Thweatt, his attorney of record, and the costs of this action are assessed against the respondent Arkansas State Police Commission."

Thus as can be seen from the order, the Chancellor did not compel the Commission to do any thing. The order entered does not mandamus the Commission to hold any kind of a hearing nor require it to perform any duty—it only enjoins the Commission from barring the news media and the public from any hearing it may hold concerning Davidson's appeal.

This court has long recognized that equity has jurisdiction to grant relief where the legal remedies are inadequate, *Ark. Cotton Grs. Co-op Assn.* v. *Brown,* 168 Ark. 504, 270 S.W. 1119 (1925), and that an adequate

remedy at law means a present remedy—not one that may be exercised some time in the future, *Taylor* v. *Bank of Mulberry*, 177 Ark. 1091, 9 S.W. 2d 578 (1928). In *Black* v. *Bowman & Trammel*, 9 Ark. 501, (1849), the jurisdictional issue was stated in this language:

> "It is a general rule, says Judge Story, subject to few exceptions, that where the plaintiff can have as effectual and complete a remedy in a court of law as in a court of equity, and that remedy is direct, certain and adequate, he must resort to a court of law for redress. But where there is a clear right, and yet there is no remedy in a court of law, or the remedy is not plain, adequate, and complete, ánd *adapted to the particular exigency,* then, and in such cases, courts ot equity will maintain jurisdiction." (Emphasis mine).

In this case the record shows the Commission waited until Davidson did not have a plain and adequate remedy at law, *Savage* v. *Hawkins, supra,* before it informed Davis of its intention to hold a secret hearing. Thus at the time Davidson filed his petition in Chancery, he did not have a plain, adequate and present remedy at law because Ark. Stat. Ann. § 33-106 requires a minimum of two days notice before a hearing could be had at law.

On the merits, I agree with Davidson. The letter by which he was fired in effect publicly accuses him of embezzling public money through the receipt of fines that he was not entitled to receive. Ark. Stat. Ann. § 42-406 (d) contemplates that any testimony heard by the Commission be transcribed because it authorizes an appeal to the Circuit Court of Pulaski County upon the record made before the Commission. Thus the Commission by holding a dark secret meeting really SERVES NO confidential personnel problem. When it is remembered that the charge upon which Davidson was fired was by law made a public record, one can only wonder what public purpose the Commission is serving in barring the news media and the public from the hearing it is required by law to hold. Of course, if, in such secret meeting, the Commission should reinstate Davidson, then of course

he will have no right of review because of mootness and will not be able to obtain a transcript of the evidence heard—and in that case he will have proved his point that he did not have an adequate remedy at law to publicly vindicate the charges against him. While there may be some who would think that the reinstatement alone should be sufficient vindication, the public, because of the darkness of the secret meeting, may assume that the Commission did nothing more than whitewash the matter.

For the reasons stated, I respectfully dissent.