The Honorable Larry Jegley Prosecuting Attorney Sixth Judicial District 122 S. Broadway Little Rock, AR 72201
Dear Mr. Jegley:
I am writing in response to your request for an opinion on several questions involving a request that was submitted under the Arkansas Freedom of Information Act (FOIA), A.C.A. §§25-19-101—109 (Repl. 2002 and Supp. 2005), to Arkansas Children's Hospital (hereinafter "ACH"). You have provided copies of correspondence pertaining to the FOIA request, which sought certain financial statements for a cardiovascular intensive care unit at ACH, and you have asked me to advise "whether [ACH] is subject to criminal prosecution, per se, or would the Democrat-Gazette be better served to pursue an FOI challenge as a civil proceeding . . .[?]" You have also asked me to answer the following more narrow questions:
 1. Criminal action (A.C.A. § 25-19-104). Given the paperwork submitted, can it be proven beyond a reasonable doubt that:
 (a) ACH is "wholly subject" to FOI, per se? (e.g.
what proof exists of doctors' salaries from UAMS operating on patients at ACH or working the unit in question? What proof of the source of UAMS doctors' salaries exists?);
 (b) ACH is "partially subject" to FOI, per se, due to receipt of public funds in whole or in part? (Does documentation exist about what units receive public funds or what doctor salaries are publicly funded?)
 (c) Whether the specific records sought from the cardiovascular intensive care surgery unit (i.e. financial records concerning certain operations) are subject to FOI, per se?
 (d) If such records are per se subject to FOI, whether exemptions in criminal prosecution may justify withholding of such financial information claimed to be a "competitive interest" (25-19-105(b)(9)(A)).
 2. Civil action (A.C.A. § 25-19-107). Given the paperwork submitted, would the Democrat-Gazette be advised to pursue a civil action? If so, would the paper be able to employ broad civil discovery methods to inquire about the details of any records which would better prove or disprove their entitlement to the specific records sought and provide a forum, such as in camera review or discovered documents, to allow a circuit court to decide whether the documents are discoverable?
 3. Other Remedies. Are there other legal remedies available to resolve the FOI request?
RESPONSE
I cannot make any prosecutorial judgments with regard to this matter, due to the intensive fact finding that necessarily attends the decision, and in recognition of the general principle of prosecutorial discretion. It has long been the policy of this office to decline to issue an opinion concerning the pursuit of criminal charges, in deference to the prosecutor's sound discretion in the matter. Nor can I offer advice regarding the best course of action for the party seeking access to records. By statute, I am forbidden to engage in the private practice of law (see A.C.A. § 25-16-701) and am restricted to advising legislators, other officials and boards on matters of public concern. A.C.A. § 25-16-706. Regarding your more narrow questions, given the fact that ACH clearly receives public funds, the inquiry in my opinion focuses on whether ACH is carrying on public business or is otherwise intertwined with the activities of government to an extent that the FOIA will be triggered under the analysis discussed below. A number of factors evidence intertwining of ACH with government and indicate that ACH is at least partially bound by the FOIA, and I believe a compelling argument can be made that ACH is wholly subject to the FOIA. I cannot, however, confidently predict what a court would hold on the question, particularly given the intensely factual nature of the question.
Question 1 — Criminal action
(a) — (c) Can it be proven beyond a reasonable doubt that ACH is"wholly subject" or "partially subject" to the FOIA?
I am neither authorized nor equipped to perform the inquiry necessary to identify all the relevant factors in deciding these matters. The question of whether ACH is subject to the FOIA, and to what extent, ultimately is a factual one falling outside the scope of this opinion. See Ark. Ops. Att'y Gen. Nos. 97-189 and 97-154. Similarly, as regards the so-called "competitive advantage" exemption,[1] I cannot determine as a matter of law whether this exemption applies so as to prevent disclosure of any of the documents at issue because this ultimately involves a factual determination, as discussed more fully below.
Although I cannot draw any legal conclusions that would require determinations of fact, I can discuss the legal principles upon which the appropriate factual inquiry and determination must be based. The FOIA in relevant part defines the term "public records" as follows:
 "Public records" mean writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005) (emphasis added). The Freedom of Information Act further provides that unless exempted from disclosure by the FOIA or another law "specifically enacted to provide otherwise," public records will be available to the public for copying and inspection. A.C.A. § 25-19-105(a)(1)(A) (Supp. 2005).
The emphasized language in subsection 25-19-103(5)(A) above reveals that private, non-governmental entities can be subject to the FOIA. The threshold question regarding any particular entity is whether it is "wholly or partially supported by public funds or expending public funds." This part of the test follows from the plain language of subsection 25-19-103(5)(A) and is satisfied only if there is a direct transfer to the private organization of money belonging to the government. Sebastian County Chapter ofAmerican Red Cross v. Weatherford, 311 Ark. 656, 846 S.W.2d 641
(1993). The government's indirect subsidy of a private organization is not sufficient to make the private organization subject to the Act. See, e.g., Ark. Op. Att'y Gen. 1996-116
(regarding a private corporation's lease of a hospital facility from the county).
The second part of the inquiry derives from the FOIA's stated purpose and policy, from which it is clear that the mere receipt of public funds does not alone make the records of a private entity "public records" under the act. In declaring the purpose and policy of the FOIA, the legislature stated:
 It is vital in a democratic society that public business be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy.
A.C.A. § 25-19-102 (Repl. 2002) (emphasis added).
In order for its records to be public under the FOIA, therefore, the private entity must also be carrying on "public business" or, as stated by one of my predecessors, be "otherwise intertwined with" the activities of government. Ark. Op. Att'y Gen. 1983-163.See also City of Fayetteville v. Edmark, 304 Ark. 179,801 S.W.2d 275 (1990). Accord Ops. Att'y Gen. Nos. 2001-352 and 1996-013 (positing the question whether there is "sufficient alignment with the government or `intertwining' of functions, to trigger the FOIA."). In Edmark, the Arkansas Supreme Court considered whether the files of private attorneys retained by a city were public records. In finding that the files were open under the FOIA, the court quoted from a recognized commentator on the FOIA thus:
 When the state or a political subdivision thereof seeks to conduct its affairs through private entities, it seems clear that those entities are for all practical purposes the government itself. It should not matter whether the activity is "proprietary" or "governmental" in nature, for in either case the government is involved in the" public business." Thus when a county official hires a certified public accountant to conduct an audit of a county department instead of using public employees for that purpose, the CPA's records relevant to that task should be obtainable under the FOIA.
304 Ark. at 187, quoting J. Watkins, Access to Public Recordsunder the Arkansas Freedom of Information Act, 37 Ark. L. Rev. 741, 764 (1984).
In summarizing the test with respect to private organizations, two recognized authorities on the FOIA have identified the following three-part inquiry:
 [T]he FOIA applies only to private organizations that (1) receive public funds, (2) engage in activities that are of public concern, and (3) carry on work that is intertwined with that of government bodies. This approach is sound. If the mere receipt of public funds were enough to trigger the act, it would reach anyone who received government largesse, including welfare recipients and private hospitals that receive Medicare and Medicaid payments. As the Supreme Court has recognized, however, the FOIA should apply when the government "seeks to conduct its affairs through private entities," for in that situation "the entities are for all practical purposes the government itself." Or, as the Attorney General has put it, the FOIA covers a publicly funded organization that enjoys a "symbiotic relationship" with the state or its political subdivisions: "[w]hen the activities of a private organization and the government become intertwined, the private organization may well render itself part of the State for [FOIA] purposes." [Quoting from Op. Att'y Gen. 1983-163.]
J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004), at 50-51 (footnotes omitted).
In applying this test to ACH, I am able to determine that the first two prongs are met. ACH's activities clearly are of public concern, and public funding is evident. With regard to funding, I assume you are correct in stating that ACH received over $2.5 million from Pulaski County last year. Although I cannot verify that exact figure, I am aware of a tax that is levied pursuant to Ark. Const. amend. 32 for the support of the hospital. Amendment 32 authorizes an annual tax on real and personal property in a county "for the purpose of maintaining, operating and supporting" a "public hospital owned by such county . . ., whether such hospital be operated by such county . . . or by a benevolent association as the agent or lessee of such county. . . ." According to Pulaski County Ordinance No. 198 (Nov. 14, 1978), a one mill "Hospital Maintenance Tax" was approved by the voters "to be used for the maintenance, operation and support of Arkansas Children's Hospital as a public hospital of the County. . . ." With regard to funding of ACH by the State, my review of the most recent appropriation laws reveals several miscellaneous grants to ACH. Act 2298 of 2005, § 37, appropriated $1,233,600 for "Children's Intensive Care,"[2] $700,000 for "Children's Hospital Payments," and $200,000 for "Children's Hospital Reproductive Health Monitoring." See also Acts 2005, No. 1591 (appropriating $500,000 from the General Improvement Fund "[f]or support of the Burn Unit of Arkansas Children's Hospital. . . .") and Acts 2005, No. 1853 ($50,000 "[f]or support of the Dental Unit of Arkansas Children's Hospital. . . ."). The legislature also appropriated $2,100,000 during the last legislative session for the "Child and Family Life Institute" (hereinafter "Institute"), which is administered under the direction of ACH. See Acts 2005, No. 2273, §§ 4, 10 and 12 (including the Institute among the named grant programs for which the Department of Human Services' Grants Fund Account shall be used). Seealso A.C.A. § 20-78-104(a)(1) (stating that "[t]he Child and Family Life Institute shall be administered under the direction of Arkansas Children's Hospital.")
It is apparent that ACH receives partial financial support from both the State and the County. In my opinion, the inquiry must focus on the third prong of the test, that is, whether ACH is "intertwined" with the government such that it is involved in "public business" or "public activity" (A.C.A. § 25-19-102,supra). My research regarding this part of the test suggests that if a private organization engages in activities or functions or provides services that are normally performed by governmental entities, then this is the type of intertwining that is most likely to trigger the FOIA. See, e.g., Waterworks v. KristenInvestment Properties, 72 Ark. App. 37, 42-43, 32 S.W.3d 60
(2000) (FOIA held applicable to a private nonprofit volunteer fire department under contract with a fire protection district to provide public safety and utility functions traditionally performed by governmental entities, citing with approval Op. Att'y Gen. 1992-205 opining that private water associations that are supported in part by public funds and performing public functions are subject to the FOIA); Swaney v. Tilford,320 Ark. 652, 898 S.W.2d 462 (1995) (working papers of private auditors hired to perform audits of the Arkansas Development Finance Authority held subject to inspection and copying under the FOIA); Op. Att'y Gen. 2001-364 (chamber of commerce hired by city to provide business and industrial promotion services deemed subject to the FOIA where, as reflected by the contract, the city did not have the facilities "to promote local businesses and industries or to attract outside business and industries.") The latter opinion found the requisite intertwining because the function to be served by the private entity was one that the government would have performed for itself if it had the resources to do so.
It has also been suggested that "perhaps the most obvious case of such intertwining occurs when a private entity receives public funds for the general support of activities that are closely aligned with those of government." Watkins and Peltz, supra at 43 (citing Rehab. Hospital Services Corp. v. Delta-Hills HealthSystems Agency, Inc., 285 Ark. 397, 687 S.W.2d 840 (1985), which involved a private entity that was incorporated under federal law as a regional health planning corporation to assist in reviewing proposed changes in the state's health care delivery system).See also Depoyster v. Cole, 298 Ark. 203, 766 S.W.2d 606 (1989) (private organization responsible for administering rules and regulations governing public school athletics); North CentralAss'n of Colleges Schools v. Troutt Brothers, Inc.,261 Ark. 378, 548 S.W.2d 825 (1977) (private nonprofit corporation setting educational standards and policies for colleges and secondary schools); Ops. Att'y Gen. Nos. 2000-039 (private nonprofit corporation licensed by the Department of Human Services to provide services for the developmentally disabled), 95-273 (private non-profit area on agency designated to provide services to older Arkansas under a federal grant program), 90-243 (nonprofit organizations receiving grants from cities or counties under A.C.A. §§ 14-173-101 to -105 to promote economic development), 90-236 (911 Communications Center supported by public funds), 89-372 (administrative body for a regional hazardous materials response team) and 89-082 (nonprofit organization assisting local law enforcement in emergency situations).
These cases and Attorney General Opinions provide some guidance with respect to the intertwining element. But it still remains unclear just how "intertwined" a private entity must be with the government before the FOIA will be deemed applicable. See,e.g., Op. Att'y Gen. Nos. 1996-013 and 1992-205. This prong of the test is also necessarily intensely factual in nature. In the case of ACH, I do find some evidence in state law of intertwining. I note for instance that A.C.A. §§ 20-16-201 and — 211 (Repl. 2005) establish the "Arkansas Reproductive Health Monitoring System" to be administered within ACH, and A.C.A. §20-78-104(a)(1) (Repl. 2001) provides for ACH's administration of the "Child Health and Family Life Institute."[3] The General Assembly has also designated ACH among the institutions that provide research under the auspices of the Arkansas Biosciences Institute (A.C.A. § 19-12-115), and has included the "Arkansas Children's Hospital Research Program" in an appropriation to the University of Arkansas for Medical Sciences ("UAMS") for personal services and maintenance and operation of the Institute (Acts 2005, No. 1403, § 6). Although I have no information regarding ACH's Research Program under this Institute, I assume from the appropriation that it is manned at least in part by UAMS personnel.
I believe these are relevant factors to consider in determining whether ACH is subject to the FOIA. I cannot decide the matter, however, based on these state laws alone. There undoubtedly are other factors to consider and I cannot, through the issuance of an Attorney General's opinion, conclusively determine such a fact-intensive inquiry. In my opinion, the provisions of law cited above indicate that ACH is at least "partially bound" by the FOIA. See generally Watkins and Peltz, supra at 58 (observing that a private organization may be "partially bound by FOIA requirements" by virtue of enjoying "only partial financial support from government.") State law targets funds for certain discrete activities, and there is evidence of intertwining with respect to such funds. In my opinion, however, the inquiry does not end there. It seems that ACH also receives general, non-designated public funds. I am referring primarily to the allocation of public funds from Pulaski County, although I also note the $700,000 appropriation under Act 2298 of 2005, § 37, for "Children's Hospital Payments," supra. Accordingly, an issue remains whether there is sufficient alignment with government, or "intertwining," to trigger the FOIA generally, such that ACH is wholly subject to the act. I have no information regarding the County funds other than what can be gleaned from Pulaski County Ordinance No. 198, supra. According to the Ordinance, a copy of which is enclosed with this opinion, a "Hospital Maintenance Tax" was approved by the voters pursuant to Ark. Const. amend. 32, "to be used for the maintenance, operation and support of Arkansas Children's Hospital as a public hospital of the County. . . ." Ordinance at 1. The Ordinance reflects the fact that the vote on the tax was precipitated by a "Memorandum of Intent" entered between the County and ACH, a private, nonprofit corporation. The Ordinance describes the Memorandum thus:
 [I]f the Hospital Maintenance Tax were approved by a majority of the qualified Electors voting at the General Election, and subject to Court approval, the County would accept ownership of the hospital properties now operated by the Corporation and located in the County (the `Hospital') as a public hospital of the County, and would lease the Hospital to the corporation.
Id. at 1-2.
The purpose of the tax is stated as follows:
 The County needs to assure that adequate medical care will be available to all children residing in the County, and accepting ownership of the Hospital, designating the Hospital as a public hospital of the County, leasing it to the corporation, and levying and collecting the Hospital Maintenance Tax will serve a proper public purpose by assuring the availability of such care.
Id. at 2.[4]
It therefore appears that it was expressly anticipated and agreed that ACH would run the public hospital after voter approval of the tax, presumably with the understanding that proceeds from the Hospital Maintenance Tax would be allocated to ACH. The Arkansas Supreme Court has not addressed a scenario such as this in the FOIA context. Nor has this type of arrangement prompted a request for an opinion of this office. I have previously opined that a private organization carried on work that was intertwined with that of a government body when it leased a hospital from a county. Att'y Gen. 2004-223. But in that instance, the county had operated the hospital prior to its arrangement with the non-profit corporation, prompting me to note that "[t]he activity of operating a hospital thus appears to be one that would be conducted by the county itself in the absence of the arrangement with the corporation." Id. It seemed clear that the necessary "intertwining" element was met under those circumstances. Seealso Op. Att'y Gen. No. 1996-116. This reasonably followed from those cases involving services or functions that were "traditionally performed" or "routinely provided" by government entities. Kristen Investment Properties, supra,72 Ark. App. at 41-42. See also Edmark, supra (public funds paid to private attorneys for work that would otherwise have been performed by the city attorney).
The issue arguably is less clear regarding ACH. The argument can be made that the County has determined to conduct its affairs through ACH by accepting ownership of the hospital properties, making the hospital a public hospital, levying the tax in anticipation of ACH running the hospital, and leasing the hospital to ACH. The corollary argument is that ACH becomes subject to the FOIA when it accepts the tax proceeds. I find this argument compelling and I believe some support for this approach might be found in cases such as Rehab. Hospital Services Corp.,supra, where "a private entity receives public funds for the general support of activities that are closely aligned with those of government." Watkins and Peltz, supra at 51. I recognize, however, that this argument might be countered with the assertions that the hospital operations nevertheless remain private and the County was never engaged and does not intend to be engaged in the activity of running a children's hospital. The small percentage of ACH's operating revenue that actually comes from tax proceeds (reportedly less than 3%) might be cited as further undermining the intertwining prong of the FOIA test.
Notwithstanding this apparently small percentage of revenue, I am nevertheless troubled by the history of the "Hospital Maintenance Tax" and the fact that the County has expressly declared the hospital to be a "public hospital" (Ordinance, supra). The Ordinance suggests that the tax is allocated to ACH for the general operation of a public hospital to provide care for all children in the County. Given the liberal disclosure standard, the court might well interpret that action in and of itself as warranting application of the FOIA. The Arkansas Supreme Court has steadfastly interpreted the FOIA liberally in favor of openness so as to serve the FOIA's purpose of assuring that the public is "fully apprised of the conduct of public business."Kristen Invest. Prop., 72 Ark. App. at 43. As I have indicated above, however, ACH presents a unique set of circumstances. I am neither equipped nor authorized to opine how a court might apply the principles of law discussed herein to the factual background concerning ACH. The question of whether any private, non-profit organization is subject to the FOIA is always a question of fact.See Op. Att'y Gen. 2004-223. A judicial action may ultimately be necessary to resolve the issue.
(d) Do exemptions in criminal prosecution justify withholding ofsuch financial information claimed to be a "competitiveinterest"?
With regard to the "competitive advantage" exemption, A.C.A. §25-19-105(b)(9)(A), supra at n. 1, I will note that in my opinion the question turns on the likelihood of substantial competitive injury from disclosure of the documents. I agree with my predecessors that this is probably the relevant test. See,e.g., Op. Att'y Gen. Nos. 1998-026, 1996-363, 1994-015, and 1991-390. This is the approach adopted by federal courts in determining whether "commercial or financial information" is "confidential" and thus exempt under the federal FOIA (5 U.S.C.A. § 552(b)(4)). See, e.g., Gulf W. Indus. v. United States,
199 U.S. App. D.C. 1, 615 F.2d 527(D.C. Cir. 1979) (relying onNational Parks Conservation Ass'n v. Morton,
162 U.S. App. D.C. 223 (D.C. Cir. 1974) ("National Parks I")). Although the absence of any guidance in the FOIA or judicial precedent in Arkansas prevents a conclusive formulation, the Arkansas Supreme Court's steadfast adherence to a narrow interpretation of FOIA exemptions (see, e.g., Waterworks v. Kristen InvestmentProperties, 72 Ark.App. 37, 42, 32 S.W.3d 60 (2000)) compels me to surmise that the court would likely adopt the federal test.See also Apodaca v. Montes, 606 S.W.2d 734 (Tex.Civ.App.-El Paso 1980) (involving a similar exemption under Texas' open records law, wherein the court adopted the federal standard in reliance upon National Parks, supra) and Smithey v. State,269 Ark. 538, 602 S.W.2d 676 (1980) (reflecting our court's willingness to follow precedents from other jurisdictions involving laws similar to Arkansas').
As for the test's application, it should be noted that the burden of proving substantial competitive injury is upon the entity seeking nondisclosure. See generally Gannett River StatesPublishing Co. v. Arkansas Indus. Dev. Comm'n., 303 Ark. 684,799 S.W.2d 543 (1990). Specific factual or evidentiary material must be presented showing actual competition and the likelihood of substantial competitive injury from disclosure of the records. Op. Att'y Gen. 1998-026. Conclusory or generalized allegations will not suffice, in my opinion. Accord Op. Att'y Gen.1996-229. The review is therefore highly factual in nature and must be undertaken by the custodian of the records with the assistance of the one claiming competitive harm. Id. Although the responsibility of review falls on the custodian, the custodian must in turn rely upon information supplied by the one seeking the exemption. This reasonably follows, in my opinion, from the public policy behind the FOIA, which indicates that public records are presumed to be open to public inspection. SeeCommercial Printing Co. v. Rush, 261 Ark. 468, 549 S.W.2d 790
(1977). Such records are to be closed only if they fit within one of the specific exemptions. Id.
Question 2 — Civil action
The decision whether to pursue a civil action in this matter is one that must rest with the party seeking access to the records, not this office. Although I am charged with advising legislators, other officials and boards on matters of public concern, I cannot counsel private litigants. See A.C.A. § 25-16-701 (private practice proscription).
In response to that part of your question concerning the use of discovery, it appears self-evident, given the alternative of no access to detailed information or records by which to prove entitlement to the records sought in this instance, that discovery in a civil action could be employed to access such information or records. How broad that discovery will be is governed the Arkansas Rules of Civil Procedure. The scope of discovery is dictated, generally, by the cause of action. Rule 26 states in relevant part:
 Parties may obtain discovery regarding any matter, not privileged, which is relevant to the issues in the pending actions, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, identity and location of any books, documents, or other tangible things and the identity and location of persons who have knowledge of any discoverable matter or who will or may be called as a witness at the trial of any cause. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
Ark. R. Civ. P. 26(b)(1) (emphasis added).
In the case of a civil action against ACH to obtain specific records, the issue will be whether ACH is subject to the FOIA. Matters pertaining to that issue thus would appear to be generally obtainable through discovery, in accordance with the above rule. This may involve an in camera review of records by the court deciding the issue, although I cannot speculate further in this regard. See generally Johninson v. Stodola,316 Ark. 423, 872 S.W.2d 374 (1994); Martin v. Musteen, 303 Ark. 656,799 S.W.2d 540(1990).
Question 3 — Other Remedies.
Other additional remedies may be available through the courts, depending upon the particular circumstances. Declaratory judgments have been held a proper remedy to enforce FOIA rights.See Arkansas Gazette Co. v. Pickens, 258 Ark. 69,522 S.W.2d 350 (1975). But there is some indication that a plaintiff would have to exhaust administrative remedies prior to using this avenue of relief. See Nat'l Park Med. Center v. DHS,333 Ark. 595, 911 S.W.2d 250 (1995). There is also some suggestion in the case law that a writ of mandamus may be an appropriate remedy.See generally Arkansas State Police Comm. v. Davidson,252 Ark. 137, 477 S.W.2d 852 (1972) (meetings) and Boyd v. Keith,330 Ark. 626, 954 S.W.2d 942 (1997) (records). Certain difficulties attend each of these remedies, however. I refer you to Watkins and Peltz, supra at 338-52, for a more thorough review.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The competitive advantage exemption provides as follows:
 It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter: . . . [f]iles which, if disclosed, would give advantage to competitors or bidders[.]
A.C.A. § 25-19-105(b)(9)(A) (Supp. 2005).
[2] My review of the 2003 appropriation acts indicates that the "Children's Intensive Care" grant is for the "Children's Intensive Care Nursery." See Acts 2003, No. 50 (1st Ex. Sess.), § 9.
[3] Subsection 20-78-104(a)(2) calls for "a cooperative agreement or contract with the Department of Pediatrics of the University of Arkansas for Medical Sciences for services required in delivering the programs of the [I]nstitute."
[4] Counties and cities are expressly authorized to "acquire, own, construct, reconstruct, extend, equip, improve, maintain, operate, sell, lease, contract concerning, or otherwise deal in or dispose of any land, buildings, improvements, or facilities of any and every nature whatever that can be used for hospitals . . . within or near the municipality or county." A.C.A. §14-265-103 (Repl. 1998).